### 68609. GRIFFITH v. THE STATE.
(322 SE2d 921)

DEEN, Presiding Judge.

The appellant, Robert Griffith, was convicted of driving under the influence of alcohol, leaving the scene of an accident, and violation of the Georgia Motor Vehicle Accident Reparations Act by driving without liability insurance. All were misdemeanor offenses.

On December 23, 1982, at approximately 8:45 p.m., a hit-and-run accident occurred at a public intersection in Athens, Georgia. Grant Humphries' car was struck by a burgundy, 1977 Oldsmobile Cutlass which immediately fled the scene; a witness followed the vehicle, obtained the tag number, and reported the information to the investigating police officer. Through the department's computer records, the police obtained the appellant's name and address as the registered owner of the described vehicle with the tag number provided by the witness.

Approximately 30 minutes after the accident, four police officers converged upon the appellant's residence (which was only a few blocks from the scene of the accident). Officer Ray Chinn knocked on the front door, but no one answered. Another officer espied someone inside the house peeking out a window as Chinn knocked, and so informed the latter. Chinn then went to the back of the house, and looking through the window he could see keys still in the interior door lock and a man ostensibly asleep on the sofa in the front section of the house.

Desiring to question the man sleeping on the sofa, Chinn climbed through a window into the house, and unlocked the rear door so that 2 other officers could enter. The officers awakened the appellant, who, responding to the officers' question, indicated that he had been driving the car in question that evening, returning from a Christmas party, and that no one else had had access to the vehicle that evening. Because the officers noticed a strong odor of alcohol about the appellant and that the appellant appeared to be intoxicated, they advised him of the implied consent warning; the appellant refused to submit to any blood alcohol content test. The officers formally placed the appellant under arrest after this interrogation, and transported him to the police station, where they subsequently advised him of the Mi-

randa warnings. Further interrogation resulted in the appellant's admission that he did not have the required liability insurance on his automobile.

The following day, Humphries visited the appellant at the latter's residence to discuss arranging for the repair of his car. Humphries testified that during that encounter the appellant had asked if Humphries was the person he had collided with the night before and had stated that he had no liability insurance.

On appeal, Griffith contends that the trial court erred in overruling his motion in limine to exclude all testimony of the police officers concerning any incriminating statements he made and their examination of his car; that the trial court erred in admitting testimony about the appellant's refusal to submit to a blood alcohol content test; that the trial court erred in not directing a verdict of acquittal on the charge of driving without automobile liability insurance; and that the trial court erred in its charge to the jury. *Held*:

1. As the investigative officers initially approached the appellant's house, they observed that the appellant's automobile's engine was warm and that the front left fender obviously had been in a collision; pieces of some trim parts found by the officers at the scene of the accident also matched the appellant's vehicle. Although he cites no authority for the proposition, the appellant contends that this examination of his vehicle constituted an illegal search because of the warrantless entry onto his premises. However, the officers certainly needed no warrant merely to approach the appellant's house to make investigative inquiries, and their observation and limited examination of the vehicle situated in the driveway was not unreasonable.

We, however, agree with the appellant that the officers' warrantless entry into his house was unjustified, unreasonable, and illegal. In this case, the officers were not in "hot pursuit" of someone who had committed a crime in their presence or whom they had probable cause to believe had committed a felony; in fact, the officers admitted that they had not had enough information to identify the appellant as a suspect and had not intended to arrest the appellant at the time of the entry. Rather, the police officers entered the appellant's residence *with the purpose of merely questioning* the appellant as to his knowledge, if any, of who had driven the vehicle.

Absent consent or exigent circumstances, a warrantless entry into a home to conduct a search or make a routine felony arrest is unreasonable under the Fourth Amendment. Payton v. New York, 445 U. S. 573 (100 SC 1371, 63 LE2d 639) (1980); *Mincey v. State*, 251 Ga. 255 (304 SE2d 882) (1983); see also Steagald v. United States, 451 U. S. 204 (101 SC 1642, 68 LE2d 38) (1981). *A fortiori*, a warrantless entry into a home merely to question someone in the investigation of a misdemeanor offense (and without probable cause to search or ar-

rest) must be deemed unreasonable, absent consent or exigent circumstances. The appellant obviously did not consent to the officers' entry into his residence, and we are not persuaded, by the officers' description, that the circumstances were exigent.

Moreover, absent consent or exigent circumstances, even though police officers have probable cause to search, they may not enter a home without a warrant merely because they plan to obtain one subsequently. United States v. Griffin, 502 F2d 959 (6th Cir. 1974). Evidence discovered *after* the issuance of a valid search warrant may be admissible, notwithstanding a prior illegal entry, United States v. Agapito, 620 F2d 324 (2d Cir. 1980); see also Segura v. United States, ___ U. S. ___ (Case No. 82-5298, decided July 5, 1984). The court in Agapito rejected the prosecution's novel suggestion of a "continuing the investigation" exception to the warrant requirement, and we concur in that rejection.

The trial court and the State relied upon OCGA § 17-4-20, which allows an officer to effect a warrantless arrest "if there is likely to be a failure of justice for want of a judicial officer to issue a warrant." However, "[t]he mere possibility of there being a failure of justice does not authorize an officer to attempt an arrest for a misdemeanor without a warrant." *Giddens v. State*, 152 Ga. 195, 198 (108 SE 788) (1921). Moreover, that justification for a warrantless arrest cannot be extended to excuse an illegal entry, especially where the officers did not decide to arrest until after the entry and the interrogation of the appellant.

Before he was formally placed under arrest, the appellant, in responding to questions propounded by the police officers, indicated that he had driven the car in question that evening; that no one else had access to the car; that he had been to a Christmas party; that he did not know his car had been involved in an accident; and that he refused to submit to a blood alcohol test. After being formally arrested and taken to the police station, the appellant was advised of his Miranda rights and again interrogated. At trial, the police officers were allowed to recount the appellant's statements over objection. That testimony should have been excluded.

Although certain evidence may be admissible under the Fifth Amendment, it may still be excludable under the Fourth Amendment, if the evidence was obtained by exploitation of an illegal arrest. Dunaway v. New York, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979); Brown v. Illinois, 422 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975); *Thompson v. State*, 248 Ga. 343 (285 SE2d 685) (1981). The factors to be considered in determining whether the evidence is tainted by the illegal arrest include "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct

. . ." Dunaway v. New York, supra at 218. Verbal evidence obtained immediately from an unlawful entry and an unlawful arrest is no less the poisoned fruit of official illegality than the seizure of physical evidence. Wong Sun v. United States, 371 U. S. 471, 485 (83 SC 407, 9 LE2d 441) (1963).

In this case, as indicated above, the appellant's inculpatory statements actually were initially the product of the illegal entry, and those initial statements obviously should have been excluded because of the illegal entry and questioning (which, in effect, was a search). The arrest thus was illegal because it was the product of the illegal entry. Subsequent to the formal arrest and advisement of the Miranda rights, however, the appellant reiterated the inculpatory statements. Applying the guidelines delineated in Dunaway v. New York, supra, it is clear that the custodial statements made at the police station likewise were tainted and should have been excluded. There were no intervening circumstances; very little time passed between the arrest and the statement; and the flagrant act of climbing through the rear window of a house was not justified by the purpose of questioning a resident.

As the appellant's inculpatory statements (as well as the refusal to take the blood alcohol test) constituted the only evidence adduced in support of the charge of driving under the influence of alcohol, the conviction for that offense must be reversed. Additionally, because we cannot conclude that there was no reasonable possibility of the improperly admitted evidence having contributed to the guilty verdict on the charge of driving without insurance, that conviction must be reversed for retrial. See Schneble v. Florida, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972).

Our conclusion about the inadmissibility of the appellant's inculpatory statements made to the police officers, however, does not require reversal of the conviction for leaving the scene of an accident. There certainly was sufficient other evidence to support that conviction: Humphries' description of the vehicle, the vehicle's driver, and the accident, and the appellant's admissions to Humphries about having been in the accident; the eyewitness testimony identifying the appellant's vehicle and tag number; the police officers' testimony about the appellant being the registered owner of the identified vehicle, and about the physical condition of the vehicle when they approached the appellant's residence approximately 30 minutes after the accident. Under this evidence, a rational trier of fact could have found the appellant guilty of leaving the scene of an accident beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and we find no reasonable possibility of the scant amount of improperly admitted evidence concerning this charge having contributed to that conviction. Schneble v. Florida, supra.

2. We reject the appellant's contention that the trial court erred in refusing to give his requested jury charge that to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of guilt of the accused. OCGA § 24-4-6. Although it may be the better policy to give the instruction in close cases, such a charge is required only where the evidence relied upon for conviction is *entirely* circumstantial, *Jones v. State*, 243 Ga. 584 (255 SE2d 702) (1979), and in this case, at least with regard to the conviction for leaving the scene of the accident, there certainly was some direct evidence, e.g., the victim's identification of the appellant and the appellant's vehicle.

3. The appellant next contends that the trial court erred in instructing the jury on the duty to give information and render aid required of a driver of any vehicle involved in any accident resulting in injury to any person or vehicle, as provided in OCGA § 40-6-271. However, he was charged with a violation of OCGA § 40-6-270, and one specific element of that statutory provision is the driver's duty to "remain at the scene of the accident until he has fulfilled the requirements of Code Section 40-6-271." The trial court's instruction on Section 40-6-271, thus was essential.

Similarly, the appellant contends that, with regard to the charge of driving a vehicle without liability insurance, the trial court erred in also instructing the jury that a driver has the duty to present proof of insurance upon the request of a law enforcement officer, a duty evidently gleaned from OCGA § 33-34-10 (f) (the breach of which carries a $25 fine). The violation of the Georgia Motor Vehicle Accident Reparations Act with which the appellant was charged, and which the evidence addressed, was knowingly operating "a motor vehicle without effective insurance on such vehicle or without an approved plan of self-insurance . . .," which constitutes a misdemeanor offense. OCGA § 33-34-12 (a). Failure to keep proof of insurance coverage and driving a vehicle without liability insurance are separate offenses, and although the conviction for driving without insurance is reversed otherwise, we note that the trial court should not have instructed the jury on the former.

4. Because of the holdings in the above divisions, we need not address the appellant's remaining enumerations of error, which concern the convictions for driving under the influence of alcohol and driving without insurance. We do note, however, that because in the original sentencing of the appellant by the trial court it is unclear as to which convictions certain conditions of probation correspond, resentencing is necessary.

*Judgment reversed in part, affirmed in part. Sognier, J., concurs. McMurray, C. J., concurs in the judgment only.*

*Kenneth Kalivoda*, for appellant.
*Ken Stula, Solicitor, Kent Lawrence, Assistant Solicitor*, for appellee.