## 72115. MILNER v. THE STATE.
(348 SE2d 509)

DEEN, Presiding Judge.

Defendant appeals from the jury's conviction of two counts of rape (OCGA § 16-6-1), one count of burglary (OCGA § 16-7-1), and one count of armed robbery (OCGA § 16-8-41). Although the notice of appeal does not clearly state that the appeal is also from the denial of the motion for new trial, as it should if that is what is intended, it may be fairly inferred that it is. That is borne out by the enumeration of errors, and we shall so consider it. OCGA § 5-6-48 (f); *Southeast Ceramics v. Klem*, 246 Ga. 294, 295 (1) (271 SE2d 199) (1980).

1. Central to this case are the enumerations which contend that the verdict is contrary to law and that the court erred in denying the motion to suppress. The former, in this connection, relates to the admission of evidence which was not suppressed as prayed for in the motion. The latter motion sought to exclude items, materials, and evidence seized by officers without a warrant while other officers were obtaining one and to evidence seized pursuant to the warrant when the others returned. All of the evidence in issue came from the yard surrounding defendant's residence.

What was actually admitted in evidence from the warrantless gathering was a green coat found in a white plastic garbage bag in some bushes about 200 feet behind the house and a glass milk bottle found about 100 feet behind the house beneath an overturned old chair. The coat was significant because the victim testified that the perpetrator had on a heavy jacket. The milk bottle was important be-

cause she related that he took her big antique-type milk jug which contained about $75 worth of pennies, and she identified the one seized as hers.

Upon receiving a report that two men had exchanged a lot of pennies for currency at a liquor store and noting that a description of their car, a yellow Duster, matched that of defendant's brother's car, four officers went to defendant's home to question his brother. They parked in front, walked to the back entrance, and were told that the brother was in the yard cutting limbs in a tree. While waiting in the yard to speak to him, they "walk[ed] around looking at the ground" when one noticed a shoe track similar to that found at the rape scene; it led from a parked yellow Duster to the back door. Two officers left to obtain a search warrant. The two who remained continued to look around, without permission, and found the jug and coat. They radioed their colleagues who were en route for the warrant, and the latter included these discoveries in the affidavit.

On appeal, Milner claims that the search without a warrant did not fall under the "plain view" exigency exception allowed by *Coolidge v. New Hampshire*, 403 U. S. 443 (91 SC 2022, 29 LE2d 564) (1971), and invoked by the state here in that the three prerequisite circumstances were not present. There must be an inadvertent discovery, it must be from a place the officer has a legal right to be at the time of the discovery, and it must be immediately apparent that the item is evidence of a crime. Id. See also *Phillips v. State*, 167 Ga. App. 260, 261 (1) (305 SE2d 918) (1983). The facts supplied only the third leg of the three-legged stool, he claims, so that this support for the admission of the items collapsed.[1]

Defendant argues that since the evidence seized during the warrantless period of the search served as part of the probable cause basis for the subsequent warrant, the illegally procured underlying basis for the warrant made it defective and thus not lawful authority for the items seized pursuant to it. The state contends that the police were authorized to be in the yard due to the exigencies of the situation in that the officers were securing the premises so as to protect the shoe track observed from being destroyed.

In *Segura v. United States*, 468 U. S. 796 (104 SC 3380, 82 LE2d 599) (1984), agents obtained a warrant and seized evidence of drug trafficking, but only after an initial illegal search. The Court there did not exclude the evidence, as the agents had already obtained incriminating information from sources wholly unconnected with the initial

---

[1] Milner claims a violation of Ga. Const. 1976, Art. I, Sec. I, Par. X (apparently meaning Ga. Const. 1983, Art. I, Sec. I, Par. XIII) also, but he supports this assertion with no argument and we consider it abandoned. Court of Appeals Rule 15 (c) (2); *Mitchell v. State*, 173 Ga. App. 560 (1) (327 SE2d 537) (1985).

entry. Evidence is not to be excluded if police have an "independent source" for discovery of the evidence. *Segura*, supra at 805. In the present case, the police possessed substantial evidence prior to the warrantless search and seizure complained of here; and, as in *Segura*, the warrantless search and seizure here occurred while some of the law enforcement officers were awaiting the return of the officers who had gone to obtain a search warrant. Wearing a "Jimmy Carter" mask, the appellant had calmly raped the victim, retired to the bathroom to smoke a Kool cigarette, and then raped the victim again. The mask was found behind the victim's house, along with a shoe track, which was similar to the one, legitimately discovered and legally obtained, outside the appellant's residence. After raping the victim, the appellant stole a milk jug containing approximately $75 worth of pennies. Though the jug was found behind the appellant's house, the police had earlier been notified by the proprietor of a local package store that two black males had brought in a quantity of pennies to exchange for currency. The proprietor gave the officers a detailed description of the car, which officers found to belong to the appellant. Other such "independent" evidence was introduced.

*Segura* held that the evidence obtained by entering the house before the search warrant was obtained should have been suppressed, but that the evidence obtained under the search warrant was admissible. In the instant case, of course, the challenged evidence was discovered while the officers remained *outside* the house awaiting the return of fellow officers with a search warrant. The officers in *Segura* were *inside* the apartment.

If, *arguendo*, the trial court in the instant case erred in not suppressing the evidence discovered before the arrival of the search warrant, the error was harmless because it was cumulative of legitimately discovered evidence. When, as here, properly admitted evidence points overwhelmingly to the guilt of the accused, failure to suppress certain other arguably tainted evidence does not constitute reversible error. *Schneble v. Florida*, 405 U. S. 427 (92 SC 1056, 31 LE2d 340) (1972).

The dissenting opinion's reliance on *Griffith v. State*, 172 Ga. App. 255 (322 SE2d 921) (1984) is misplaced, as the facts in that case are not sufficiently similar to those of the instant case to render that opinion apposite here. Moreover, *Griffith* was a two-judge decision and therefore provides no binding precedent.

2. Defendant sought to exclude evidence of independent crimes which defendant contends impermissibly placed his character in issue, in violation of OCGA § 24-2-2.

(a) Theft. A witness who lived two houses away from the victim testified that a lug wrench found a few feet from the window through which the assailant gained entrance to the victim's house, which was

the scene of the rape, and a mask allegedly worn by the rapist and found in a wooded area 200-250 feet from the victim's house, had been stolen from his truck. He discovered and reported it within a few days of the rape.

As defendant concedes, however, there was no testimony identifying defendant as the thief of the mask and wrench. Therefore, the testimony in question did not place defendant's character in issue. *Brentlinger v. State*, 173 Ga. App. 555, 556 (327 SE2d 536) (1985). It just explained the possible source of the mask and wrench used in the commission of the crimes charged.

Even if defendant had been inferentially connected to the items as a thief, it would tend to show scheme and course of conduct. "[A]cts are pertinent as a part of the *res gestae* if they are done pending the hostile enterprise, and if they bear upon it, are performed whilst it is in continuous progress to its catastrophe, and are of a nature to promote or obstruct, advance or retard it, or to evince essential motive or purpose in reference to it. . . ." *Sypho v. State*, 175 Ga. App. 833, 835 (334 SE2d 878) (1985).

(b) Attempted rape. Defendant next challenges the introduction of testimony regarding an attempted rape one month prior to the rape in question, asserting insufficient similarity. A witness testified that she was attacked by defendant as she left her house late in the evening. She stated that her assailant grabbed her, hit her in the face, and warned that if she did not stop screaming he would hit her again. He threw her on the ground, took off her pants and covered her head with them, and pulled down his pants. He got up, told her not to move, and then came back later and put his knees beside her head. He took money from her pants pocket and left.

"Generally, evidence of other criminal acts by a defendant is inadmissible because it tends to place the defendant's character in issue. [Cits.] However, exceptions to this rule have arisen, and evidence of independent crimes is admissible for limited purposes if two conditions are met: ' "First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter. [Cits.]" ' [Cit.] If these conditions are satisfied, evidence concerning the independent crimes may be admitted for the purposes of showing, among other things, identity, motive, plan, scheme, bent of mind, intent, and course of conduct. [Cits.]" *Kilgore v. State*, 251 Ga. 291, 296-297 (3a) (305 SE2d 82) (1983).

The victim of the attempted rape identified defendant as her assailant, and there is sufficient similarity between that crime and the offenses for which defendant was on trial. As in the attempted rape, the victim in the case at bar was attacked at her home. The assailant

hit her, threatened to hit her again, covered her eyes (here with a pillowcase), took off her panties, forced her onto the floor, and in this case went beyond the attempt and actually raped her. He also told her not to move and got up, only to return minutes later for a repeat attack. Similarly too, he took money from the victim ($75 in pennies in a milk jar in her home).

The evidence showed that the independent conduct was sufficiently similar. *State v. Johnson*, 246 Ga. 654, 655 (1) (272 SE2d 321) (1980).

(c) Rape. Next challenged is testimony regarding a police investigation of a rape six days prior to the offense on trial. A police officer testified that the distance between the home where this rape occurred and defendant's home was "about half a block away. You can stand on his front porch and see her residence." He stated that they removed two throw rugs from the victim's home for analysis. A forensics expert testified that one of the hairs found on a throw rug was microscopically identical to the pubic hair of the defendant, but that he could not state definitely that it was defendant's hair. Defendant argues that this evidence is inconclusive to prove defendant was the perpetrator of this other crime.

"In deciding whether to admit evidence of independent crimes, it is not necessary for the state to prove beyond a reasonable doubt that the defendant was the perpetrator. . . ." *Kilgore,* supra at 297. "Circumstantial evidence may be used to establish a prior similar offense." *Smith v. State*, 154 Ga. App. 497, 499 (1) (268 SE2d 714) (1980). " 'In crimes involving sexual offenses, evidence of similar previous transactions is admissible "to show the lustful disposition of the defendant and to corroborate the testimony of the victim as to the act charged." [Cits.]' " *Momon v. State*, 161 Ga. App. 629, 630 (2) (288 SE2d 767) (1982), affirmed at 249 Ga. 865 (294 SE2d 482) (1982).

The question of whether the evidence was sufficient to prove that defendant was the perpetrator of the independent crime was submitted to the jury with appropriate instructions. Although defendant was not identified positively as the perpetrator, the evidence was sufficient to support such a finding if the jury chose to believe it. *Smith,* supra at 499; *Tutt v. State*, 165 Ga. App. 715, 716 (1) (302 SE2d 580) (1983); *Childs v. State*, 176 Ga. App. 549, 552 (2) (336 SE2d 309) (1985).

Defendant also claims that the prejudicial effect of this evidence outweighed its relevance. " 'Generally, evidence of independent crimes is inadmissible unless its relevance . . . outweighs its prejudicial impact. [Cits.]' [Cit.] However, the evidence was highly relevant in determining whether defendant had committed the offense charged as there was 'sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to

prove the latter.' [Cit.]" *Smith*, supra at 499. We do not believe the court erred in admitting the evidence.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Sognier, Pope, and Benham, JJ., concur. Banke, C. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

I dissent due to the ruling in Division 1.

There is nothing in the record to reflect that there was a threat of imminent destruction of the shoe track so as to create exigent circumstances for a search of the curtilage and seizure of items found there before a search warrant was obtained.

Pretermitting the question of whether the officers were authorized to go into the backyard initially, enabling them to discover the track, or whether they were authorized to remain to protect the track, the exigency argument fails to persuade me. Instead of securing the premises to protect the evidence, the two police officers were "looking around in the rear of the house, you know checking the perimeter out, on the outside of the house." This officer further explained, "We were looking for anything that would relate to that case, in — on the outside of the residence. I went back behind the residence, some 200 feet. In some trees, bushes, there was a white, plastic garbage bag that was in the bushes there, and inside of this bag was a three-quarter length green coat. . . . I showed the bag to the Sheriff and to Investigator Weekly, and then we secured it and looked at the perimeter even moreso." It was then that he spotted the glass milk jug under the overturned chair.

In addition to the fact that the officers were unauthorized to be in the place where they noticed the evidence in question, the green coat was clearly not in plain view. It was contained in a white, plastic garbage bag. The discovering officer "pulled the edge of [the bag] up with my flashlight and saw it."

As there were no exigent circumstances to authorize the warrantless search and seizure, I conclude that the trial court erred in denying the motion to suppress. "[A]bsent consent or exigent circumstances, even though police officers have probable cause to search, they may not enter a home [or its curtilage] without a warrant merely because they plan to obtain one subsequently." *Griffith v. State*, 172 Ga. App. 255, 257 (1) (322 SE2d 921) (1984). There is no "continuing the investigation" exception to the warrant requirement. Id.

*Segura v. United States*, 468 U. S. 796 (104 SC 3380, 82 LE2d 599) (1984), does not provide authority for an opposite result. In *Segura* the evidence challenged in the Supreme Court was seized *after* a search warrant was issued. It held that even if the initial entry into the premises was illegal, the evidence was discovered during a

search pursuant to an independently-sourced valid warrant, and the connection between the illegal police conduct and the discovery of the evidence was "sufficiently attenuated as to dissipate the taint." *Segura*, supra, 468 U. S. at 815. The search at issue here was conducted *before* the issuance of a warrant. Moreover, in *Segura* there was "no evidence that the agents in any way exploited their presence in the apartment; they simply awaited the issuance of the warrant." *Segura*, supra, 468 U. S. at 812. Here, instead of simply *securing* the premises and awaiting the issuance of the warrant, see *Segura*, supra, 468 U. S. at 809-810, the officers conducted a search. As pointed out previously, the evidence obtained during the warrantless search was crucial.

Because I cannot conclude that there was no reasonable possibility of the improperly admitted evidence having contributed to the guilty verdict, that evidence reflecting identification of defendant as the offender, the convictions must be reversed. *Schneble v. Florida*, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1972). Not only did the evidence challenged implicate defendant in the offenses for which he was on trial, but the coat also went to the identification of defendant as the perpetrator of the independent crime of attempted rape.

2. I agree with the remaining divisions of the opinion.

I am authorized to state that Judge Carley joins in this dissent.

DECIDED JULY 16, 1986 —
REHEARING DENIED JULY 31, 1986

*J. Reginald Poss*, for appellant.
*Joseph H. Briley, District Attorney*, for appellee.