## 76242. HOUSTON v. THE STATE.
(370 SE2d 178)

BIRDSONG, Chief Judge.

Anthony Houston brings this appeal from his conviction of burglary, armed robbery, and two counts of rape. Houston was jointly indicted with Oliver Twist Surry for these offenses. Surry entered pleas of guilty and testified as a witness for the State. From the evidence admitted, the jury was authorized to find that Houston and Surry entered the home of L.F. and his family through a rear window. The defendant attacked Mr. F. with a gun and placed him on the floor, face down, and tied his hands. Mrs. F. had her hands and feet tied to the four bedposts and a pillow placed over her face. Their daughter was brought into the room and placed on the floor by her father. Then the father was taken to the hallway and tied to a washing machine and beaten about the head. The defendant asked him for "reefer" and "cocaine," but the father told him he did not have any. Houston and Surry spent approximately three hours in the house that evening. The mother was raped five times and the daughter was raped three times. The house was ransacked and various personalty taken, television sets, watches, jewelry, a typewriter and a pistol.

A palm print was taken from the washing machine and compared with the prints of Anthony Houston. The police expert was of the opinion that the palm print taken from the washing machine was that of the defendant. The family was asked to view a photographic lineup and the father and daughter identified Houston's photograph as one of the men who had burglarized their home and raped the mother and

daughter. Mrs. F. was unable to visually identify anyone as a pillow had been placed over her head.

An arrest warrant was issued for Houston and a search of the apartment where he was living revealed much of the property taken from the burglarized home. Houston was found hiding underneath a large pile of clothing in a closet. A physical lineup was held at the police station and the father and daughter identified Houston as one of the individuals who had beaten the father and raped the mother and daughter. Mrs. F. was unable to visually identify Houston at the physical lineup, but after having the participants in the lineup speak words said to her during the time she was being raped, Mrs. F. identified Houston as her attacker. Surry testified for the State and identified Houston as his accomplice that evening. The jury returned a verdict of guilty and Houston brings this appeal. *Held*:

1. The State offered evidence of what it claimed to be two prior similar offenses. Appellant's objection was overruled. On appeal, appellant argues "there was very little proof of identity of Appellant as the perpetrator . . . [and] [t]here was no physical proof that Appellant committed the crimes alleged," and such evidence did not show "intent or state of mind . . . motive" and "there was virtually no similarities and a large number of dissimilarities."

" '(B)efore evidence of independent crimes is admissible two conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter.' " *State v. Johnson*, 246 Ga. 654, 655 (272 SE2d 321). Hence, the only separate crimes which are admissible are those that either are similar, or logically connected to the offense with which charged in the case at bar. No claim is made to a logical connection between the prior offenses, but they were admitted on the bases of similarity. If such offenses are similar, they are admissible to show identity, motive, plan, scheme, bent of mind, or course of conduct. Id.

Ms. A.R. testified she was living with her cousin on June 12, 1986, when she was awakened by intruders who entered her bedroom through the window at 5:00 a.m. They tied her hands and feet, covered her head, and kept saying "not to make any noise, not to scream or else we'll kill you." She was raped three times by one man and one time by a second man. The men asked for money and "where is the cocaine, and where is the reefer and they kept saying we're the klan and you all stay out of Stone Mountain. . . ." She identified the defendant as one of her rapists. In the incident charged in the instant case, Mr. F. had testified that they had asked him for "reefer" and "cocaine" and the daughter and wife heard the rapists ask for money and cocaine. Mr. F. said that defendant told him: ". . . I own Stone

Mountain, stay out of Stone Mountain. . . ." Both the mother and daughter were told repeatedly throughout the episode to keep quite or they would be killed. When the burglars departed Ms. A.R.'s house, they took her television set, wrist watch, clock radio and car keys.

Ms. S.S. testified that on June 18, 1986, she was at her boyfriend's house and three men with guns entered the house. She was tied up, blindfolded and gagged. She was raped repeatedly by each of the three men. They told her to keep her eyes closed and if she looked at them they "would blow [her] brains out." She identified the appellant as one of her rapists. Her boyfriend was tied up and heard the men ask for "cocaine, cocaine, cocaine." He also identified appellant as a participant. When the men left, they took a wide variety of personal items, including the boyfriend's truck. A friend who was present at that time saw the three men enter the yard, with guns, and he attempted to run but was told: "move and you're dead, honky." He was blindfolded and gagged. His hands were tied behind him and he was struck many times on the head.

The admissibility of "other offense" evidence is a matter which lies within the sound discretion of the trial judge. *Harris v. State*, 255 Ga. 500, 502 (340 SE2d 4). The prerequisite foundation of identity of the appellant as the perpetrator of the independent offenses was met by the evidence. *Hamilton v. State*, 239 Ga. 72, 75 (235 SE2d 515); *Sablon v. State*, 182 Ga. App. 128, 130 (355 SE2d 88); *Milner v. State*, 180 Ga. App. 97, 100 (348 SE2d 509). The evidence pertinent to a determination of similarity and relevance was shown by that cited above. *Felker v. State*, 252 Ga. 351 (1) (314 SE2d 621); *Kilgore v. State*, 251 Ga. 291, 297 (305 SE2d 82); *Harper v. State*, 180 Ga. App. 20 (1) (348 SE2d 318). We find no error in the admission of this evidence.

2. It is enumerated as error that the district attorney misled the court in his recital of "facts" of alleged similar transactions, thereby gaining admission of other offenses which placed the appellant's character in evidence. The district attorney had filed notice of intent of the State to introduce evidence of prior similar transactions required by the Uniform Superior Court Rules. A hearing was held just prior to trial and the district attorney stated in his place what he expected the evidence to show happened in the instant case, and what he expected the evidence would show in the two prior incidents. This court, in *Hall v. State*, 181 Ga. App. 92 (351 SE2d 236), approved such a procedure as satisfactory compliance with the Rules. Appellant has pointed out some minor inconsistencies between the district attorney's summary of expected testimony and that which was finally introduced. We have carefully examined the pretrial summary and the evidence admitted, and find no substantial difference of any ma-

terial fact. This court has adopted as its primary consideration, whether defendant was *deprived* of any substantial rights in the State's execution of the intent of the Rule. *Devane v. State*, 183 Ga. App. 60, 62 (357 SE2d 819). "The burden is on the party claiming error not only to show error, but error which injured him, and unless the error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right, an appellate court will not reverse." *Stewart v. State*, 180 Ga. App. 266, 267 (349 SE2d 18). We find substantial compliance with the Rule (*Sweatman v. State*, 181 Ga. App. 474 (1) (352 SE2d 796)), and no reversible error.

3. A *Brady* motion was filed by appellant for all "exculpatory, impeaching and mitigating" information in the District Attorney's file. Appellant's attorney states he was not permitted to examine the district attorney's file nor was an in camera inspection made by the trial court. He contends that "[d]uring the trial of the case, it was revealed that [Mrs. F.] was unable to identify Appellant by his appearance in a physical lineup . . . or from a photographic display shown her only two days after the incident."

Black defines "exculpatory" as "clearing or tending to clear from alleged fault or guilt; excusing." Black's Law Dictionary (4th ed.) The fact that Mrs. F. was unable to visually identify the appellant in a photo or physical lineup, before identifying him in the physical lineup by his voice, is not "clearing or tending to clear from alleged fault or guilt; [or] excusing." In other words, the mere failure of a rape victim to identify the actor does not clear that party from guilt particularly when she identifies the actor by another feature. This is true in this instance when the man is identified by another rape victim who was present during the rape of her mother, and the father who identified the appellant, and the accused's participant who identified appellant as the guilty party. Neither can this information be "impeaching" or "mitigating" under the facts of this case. Further, there is no evidence the State made any effort to intentionally suppress the evidence. To the contrary, in the opening statement it was shown that Mrs. F. could not identify anyone in either the photographic lineup or the physical lineup. No objection was made at that time nor was any objection made during the testimony of Mrs. F. when she stated exactly what the district attorney had said she would state. Following her daughter's testimony and excusal from the stand, counsel then objected to the earlier testimony of Mrs. F. on the basis that it was "*Brady* material" which he had never been provided in response to his motion.

"There is no general constitutional right to discovery in a criminal case, and *Brady[ v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215)] did not create one. . . ." *Weatherford v. Bursey*, 429 U. S. 545, 559 (97 SC 837, 51 LE2d 30). Neither is *Brady* violated when *Brady*

material is made available to the defendant during the trial. *Castell v. State*, 250 Ga. 776, 781 (301 SE2d 234). Nor is there any Georgia statute or rule of practice which requires the State to open its files to a defendant's attorney, *Stanley v. State*, 153 Ga. App. 42 (2) (264 SE2d 533). Neither is an accused entitled to receive copies of police reports or investigative reports made in the course of preparation of the case against the defendant. *Stevens v. State*, 242 Ga. 34, 37 (247 SE2d 838). It is only when the " ' "omitted evidence creates a reasonable doubt that did not otherwise exist, [that] constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." ' " *Harper v. State*, 249 Ga. 519, 528 (292 SE2d 389); accord *United States v. Agurs*, 427 U. S. 97, 104 (96 SC 2392, 49 LE2d 342). There can be no reasonable doubt as to the guilt of the appellant for the offenses for which he was found guilty and we find no error.

4. A palm print was lifted from the washing machine in the burglarized home and was compared to appellant's fingerprint card on file with the police. Because of the match of the palm print with appellant's prints, a photographic lineup was prepared for the victims. Mr. F. and his daughter selected appellant's photograph as one of the parties who had burglarized their home and raped the mother and daughter. An arrest warrant was issued for appellant and after his apprehension he was placed in a physical lineup where he was identified by Mr. F. and his daughter, and after speaking words uttered during the commission of these offenses, Mrs. F. identified appellant as her rapist. Appellant enumerates as error the failure of the State to provide him with counsel at his physical lineup.

The United States Supreme Court has held clearly "that the right to counsel . . . attaches only to corporeal identifications conducted 'at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' 406 U. S. at 689. This is so because the initiation of such proceedings 'mark the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.' " *Moore v. Illinois*, 434 U. S. 220, 226-227 (98 SC 458, 54 LE2d 424). Georgia follows this same procedure. *Young v. State*, 243 Ga. 546, 547 (255 SE2d 20); *Disby v. State*, 238 Ga. 178, 179 (231 SE2d 763); *Painter v. State*, 237 Ga. 30, 31 (226 SE2d 578). There were no inherently or unnecessarily suggestive procedures employed at the lineup, nor do we find any possibility of irreparable misidentification because appellant's accomplice positively identified him as the person with whom he acted in committing these offenses. See *Wiley v. State*, 250 Ga. 343, 348-349 (296 SE2d

714). These enumerations are without merit.

5. Appellant enumerates as error the trial court's denial of his motion for mistrial for argument made during an opening statement to the jury that he expected the evidence to show "defendant was asking for cocaine, said, where is the cocaine. . . ." Counsel objected and moved for a mistrial on the basis that he "has not been charged with any offense involving drugs" in this case. The trial court ruled that the State "has a right to show what happened on that occurrence . . . and if he mentioned cocaine, then [the State] has a right to refer to it also."

The court clearly invoked the res gestae rule (OCGA § 24-3-3) that "[t]he state is entitled to inform the jury of all the circumstances surrounding the commission of the crime or crimes charged and we find no error in admitting this evidence as part of the res gestae even though it may have incidentally placed the defendant's character in evidence." *Chambers v. State*, 250 Ga. 856 (2) (302 SE2d 86); accord *Wolke v. State*, 181 Ga. App. 635 (2) (353 SE2d 827); *Cowart v. State*, 179 Ga. App. 108, 109 (345 SE2d 655).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED MAY 12, 1988 —
REHEARING DENIED JUNE 1, 1988 — 

*Rise H. Weathersby, Chandelle Turner*, for appellant.
*Lewis R. Slaton, District Attorney, R. Andrew Weathers, Benjamin H. Oehlert III, Joseph J. Drolet, Henry M. Newkirk, Assistant District Attorneys*, for appellee.