## 77347. FRANKLIN v. THE STATE.
### (376 SE2d 225)

BEASLEY, Judge.

Defendant appeals his convictions of aggravated assault (OCGA § 16-5-21 (a) (2)), rape (OCGA § 16-6-1 (a)), armed robbery (OCGA § 16-8-41 (a)), and two counts of aggravated sodomy (OCGA § 16-6-2 (a)) committed upon S. T., and of robbery by force and intimidation (OCGA § 16-8-40 (a) (1) & (2)), aggravated sodomy, and burglary (OCGA § 16-7-1 (a)) committed upon S. J.

1. Defendant contends the introduction of three similar crimes was error in that the crimes were not similar. Two of these incidents were the subject of the second and third counts of the eleven-count indictment which had been severed from the remaining eight counts. The third was a prior burglary to which defendant pled guilty in 1980.

The incident in the present case occurred in the early morning hours of July 4, 1987. S. T. and S. J. were roommates in an apartment complex at 5555 Roswell Road. S. J. and S. T. were asleep in their apartment. S. J. had gone to sleep watching television and had left a light on. She awoke between 3:30 and 4:00 a.m. to find a hand on her neck, pushing her face into her pillow. Initially she thought it was a joke. She was told not to scream or move and, because the voice sounded like that of a black male, she thought it might be her boyfriend. However, when the assailant released her to go toward the door to her bedroom, she turned and looked at him "3 to 5 seconds dead flat in the face" and realized it was a stranger, a white male with dark hair parted in the middle and a moustache.

He told her not to look at him, came back to her and pressed a sharp object into her side. Over the next hour to hour and-a-half, the man terrorized both her and her roommate, S. T. Giving the women a choice to either "suck or fuck," he forced S. J. to perform oral sodomy on him, took $70 from her purse, repeatedly raped and sodomized S. T. both orally and anally, and took money from S. T.'s clothing.

S. T. had awakened during the assailant's initial encounter with S. J., thinking that S. J.'s boyfriend was with her. S. T. went to the rest room, returned to her room and locked her bedroom door, as was her habit. She then heard someone rattling her doorknob. Believing it was S. J., she opened the door and a gloved hand came at her and the assailant charged her. She saw his face when he ran into the lighted room. She also saw his face later in a mirror.

Both women were blindfolded during most of the ordeal, but both saw the attacker's gloves and described them as brown and burlap-like. While S. T. was being forced to perform oral sodomy, although she could not see above the blindfold, she could see below it and saw his olive green cotton pants. Both women said he was wear-

ing a blue jean jacket.

The assailant told the women that he and his accomplice (although there was only one man there) had been running from the law over three states and that his partner would kill them. He asked where he was and for directions south.

After the man left, the women ran to Roswell Road to use the phone, not having one. They flagged down a policeman.

It was discovered that entry had been made through the sliding glass door of the apartment, which S. T. had checked before retiring and which had been locked.

Three days later, the two women spent approximately four hours with a police artist preparing a composite drawing of the assailant. The composite was broadcast over area television, resulting in a call from a probation/parole officer on July 9. He advised the officers that the drawing appeared to be of defendant, one of his parolees. Defendant was on parole after serving six years of a twenty-year (twelve to serve) sentence for burglary for the 1980 similar crime set out below.

Defendant was arrested. A search warrant for his car produced a blue jean jacket, a pair of olive green cotton uniform pants, and a pair of brown burlap garden gloves.

On July 8, both women were shown a photographic lineup which did not include defendant but consisted of similar looking males. Both women said the assailant was not among that group. The next day, the women were shown a different photographic lineup which included the defendant's photo. Both picked his picture and identified him in person at the trial.

The three similar incidents were as follows:

On September 13, 1980, G. C. lived in an apartment complex in Vinings. She had a roommate who had been out of town the preceding week but had returned the previous evening. About 6:30 a.m., G. C. opened the sliding glass door and went to get in the shower. She heard a crash in her bedroom and looked out to find defendant. He accosted her in the shower, told her he was not there to kill her, just to fuck her. He told her not to look at him. She told defendant she had a roommate, whereupon he said she did not. Her roommate's dog began to bark and her roommate opened her bedroom door, allowing the dog to run out. Defendant loosened his grip on G. C. and she ran into her roommate's room. Defendant fled. He was wearing blue jeans and a tee shirt. She identified his photo from a spread and he was arrested. He pled guilty to Count 5 of the resulting indictment, which specifically charged him with burglary "with intent to commit rape," and was imprisoned for six years.

On June 30, 1987, P. S. who resided at an apartment on Roswell Road, heard a noise at about 4:45 a.m. She turned on the light in her living room and saw the torso of a white male with a moustache at-

tempting to come into the apartment through a low window which had been partially open. His hands were stuck by his side and were not visible to her. He was wearing a thin women's stocking as a mask, a tee shirt and jeans. She was five feet away and saw his face clearly. Although she screamed, he continued to try to get in. She went to her bedroom and returned with her loaded gun, threatening to blow his head off. He left. She was shown the same photo spread as S. T. and S. J. and identified defendant's photo, saying she was "75% sure." At trial she identified defendant and stated she had no doubt he was the man.

On July 1, 1987, P. A., a male who lived with a woman in an apartment on Roswell Road, was about to take a shower at 6:15 a.m. when the lights in the lavatory went out. He went to investigate and saw a white male with dark hair and a moustache wearing jeans, a black tee shirt, and black driving gloves. When the man saw P. A., he looked startled and ran. The apartment was on the third floor and entry had been obtained by climbing to the third floor balcony and breaking in through the sliding glass door. P. A.'s roommate kept regular hours. P. A., for the week preceding the incident, had been working two jobs, leaving the apartment very early and returning very late. Within days, P. A. was shown the photo spread including defendant and picked his picture.

In the incident on trial, the State's theory was that defendant was a pattern rapist who staked out apartments and victims prior to attacking and, because of his being caught in 1980, wore gloves and on one occasion a mask and kept his clothes on during assaults to prevent leaving fingerprints and hair as evidence.

The State produced in rebuttal a man who had been imprisoned with defendant. This man testified that on April 20, 1987, he had run into defendant at a Marietta restaurant/lounge where he and defendant talked. He said defendant repeatedly asked women to dance and they refused. One did so repeatedly. Defendant called her a "white bitch." Defendant also told him that his women had neglected him while he was in prison and he was going to "get over on them" for doing that. The witness said that during their imprisonment, defendant socialized primarily with black inmates, and "resembled a black person and could talk like a black person."

Defendant's defense was alibi. His girl friend and a friend he had known since childhood testified that on July 3 to 4, defendant was a customer at the bar where the girl friend worked, staying until she closed up at 3:30 to 4:00 a.m., when he and she went to her apartment where they stayed.

"Generally, evidence of other criminal acts of the defendant is inadmissible because it tends to place the defendant's character into evidence in violation of OCGA § 24-9-20 (b). Exceptions allow inde-

pendent crimes to be introduced on two conditions: 1) there must be evidence that defendant was in fact the perpetrator of the independent crime, and 2) there must be sufficient similarity or connection between the independent crime and the charged crime that proof of the former tends to prove the latter. *State v. Johnson,* 246 Ga. 654, 655 (1) (272 SE2d 321) (1980); *Sport v. State,* 253 Ga. 689 (324 SE2d 184) (1985). Thereafter the independent crime may be introduced to prove identity, motive, plan, scheme, bent of mind and course of conduct. [Cit.]" *Sablon v. State,* 182 Ga. App. 128, 130 (2) (355 SE2d 88) (1987).

Defendant admitted he was the man in the 1980 incident. He was positively identified in court by the other two victims, both of whom had previously picked his photo from a spread.

Since defendant's only defense was that he was elsewhere and was not the assailant, identity was the primary issue. The other crimes were admissible for this purpose and were sufficiently similar to meet the second prong of the test. Although defendant argues here that the 1980 incident was "too old," that ground was not raised below and will not be considered here for the first time. *Johnston v. State,* 178 Ga. App. 219, 222 (4) (342 SE2d 706) (1986); see *Nelson v. State,* 181 Ga. App. 481 (2) (352 SE2d 804) (1987), in which an 11-year-old crime was admitted.

The other crimes were properly admitted. *Houston v. State,* 187 Ga. App. 335, 337 (1) (370 SE2d 178) (1988).

2. In his second enumeration of error, defendant argues that his character was improperly placed into evidence without his having first done so, by the State's reference to his plea of guilty in its opening statement. This was not objected to below and will not be considered for the first time here. *Johnston,* supra.

He further contends that it was improper for the court to allow into evidence a certified copy of the 1980 indictment. When the State originally tendered the copy in its case-in-chief, the court sustained the objection. The court offered counsel for defendant an overnight opportunity to "sanitize" the copy by removing all reference to the counts which were disposed of by nolle prosequi. Defendant's counsel took a copy overnight but never presented to the court the redacted version.

Defendant admitted that he had been the man in G. C.'s apartment but said he was drunk and was being driven home by "Wendell"; the next thing he knew he woke up in his car in front of G. C.'s apartment. He had merely gone into the apartment looking for Wendell and had meant G. C. no harm.

When asked by the State if he had not pleaded guilty to burglary with intent to commit rape, defendant denied it. The indictment had, in fact, specifically so charged him and he pleaded guilty to it.

At that time, the State tendered the certified copy. Defendant moved for mistrial on the ground the State had interjected the entire five counts of the indictment when the court had not allowed that in earlier rulings (apparently referring to the court's ruling that the document could not be admitted in the State's case-in-chief) or to admonish the district attorney not to proceed with improper and prejudicial cross-examination.

The court ruled that the line of cross-examination was appropriate, which it was, *Jones v. State*, 257 Ga. 753, 759 (1 a) (363 SE2d 529) (1988), and admonished the district attorney not to go into the other counts. He did not. Having received one of the alternative forms of relief for which he asked, having failed to modify the indictment when given the opportunity, and not having renewed the motion for mistrial or otherwise objected, there is nothing of which to complain. *Kent v. State*, 182 Ga. App. 592, 593 (2) (356 SE2d 543) (1987); *Burce v. State*, 146 Ga. App. 383, 384 (246 SE2d 412) (1978).

3. The third enumeration contends the evidence was insufficient. It was not. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED NOVEMBER 29, 1988.

*M. Muffy Blue, Jonathan J. Wade*, for appellant.
*Lewis R. Slaton*, District Attorney, *Joseph J. Drolet, Henry Newkirk, R. Andrew Weathers*, Assistant District Attorneys, for appellee.