A91A0090. LORD v. THE STATE.
(406 SE2d 137)

ANDREWS, Judge.

Lord appeals his convictions of false imprisonment, aggravated assault with intent to rape, and robbery. The charges arose from his assault on a young woman using a pay phone at night. Two of the three enumerations of error deal with the admission into evidence of two uncharged crimes and the third alleges error in the conduct of

voir dire.

Viewed in favor of the verdict, the evidence regarding the charged incident was that on September 21, 1988, around 10:30 p.m., G. T., then 19 years old, stopped at a gas station pay phone off I-85 near Lilburn to call her friend. As she was going to the phone, a man came up and told her he was in an accident and had to call his wife or ex-wife. G. T. asked him to use some other phones in a less well-lighted area of the station and he said he would wait, because he had hurt his leg. He then grabbed her and pushed her into her car. When she screamed and kicked, attempting to get out of the car, he told her he had a knife and, if she did not shut up, he would cut her. He told her his name was Steve (Lord's first name). She stopped struggling and he locked the car doors. He grabbed some money from her purse, put it on the dash and said he did not want her money. While saying he was not going to hurt or rape her, he reclined the car seat and made her raise her skirt. He then put his finger in her vagina, but told her he was not going to penetrate her. At that point, a police car pulled into the station and he grabbed the money and ran.

The first uncharged incident occurred on September 24, 1988. M. H., 23 years old, was using a bank teller machine at 9:00 p.m. when she was approached from behind by a man who put a knife to her neck, told her not to make any noise, and dragged her to a wooded area behind the bank where he fondled her. He then took her to her car, made her lie down in the seat and put the knife to her throat. He told her he was not going to rape her, drove her to the side of a highway near Lilburn and raped her. He told her his wife had been killed in a car wreck and he was in a lot of pain.

On September 26, 1988, around 9:00 p.m., R. D., age 29, was using a pay phone outside a K-Mart in Cobb County. She noticed a man drive by in a red car with one window broken out and repaired with duct tape. As she was returning to her car, the man came up behind her and forced her into her car. She struggled vigorously with him, including grabbing a pocket knife and attempting to cut him. She thought she saw him with a knife and she was cut on the leg during the struggle. He finally left her car, telling her she was not as cooperative as the "two girls in Lilburn."

The red car, registered to Lord, was impounded at the K-Mart after R. D. called police.

Lord gave a statement to police admitting his contact with M. H., including raping her. All three women were beaten and bruised on their faces during these incidents. All three positively identified Lord as their attacker.

1. (a) Lord objected to the introduction of the uncharged incidents on the grounds that there were no significant similarities or logical connection between them and the charged crime and that any

relevance was outweighed by prejudice to Lord. After hearing the evidence out of the jury's presence following G. T.'s testimony, the court concluded that the incidents were sufficiently similar and, after instructing the jury as to the limited purpose for their introduction, allowed the evidence.

While generally evidence of other criminal acts committed by an accused is inadmissible because it tends to put the accused's character into evidence in violation of OCGA § 24-9-20 (b), " '[e]xceptions allow independent crimes to be introduced on two conditions: 1) there must be evidence that defendant was in fact the perpetrator of the independent crime, and 2) there must be sufficient similarity or connection between the independent crime and the charged crime that proof of the former tends to prove the latter. [Cits.] Thereafter the independent crime may be introduced to prove identity, motive, plan, scheme, bent of mind and course of conduct. (Cit.)' *Sablon v. State*, 182 Ga. App. 128, 130 (2) (355 SE2d 88) (1987)." *Franklin v. State*, 189 Ga. App. 405, 408 (1) (376 SE2d 225) (1988).

Lord admitted one of the uncharged incidents. Lord's defense to the charged incident was alibi. Two witnesses testified that he was seen by them about the time of the charged incident. "Since defendant's only defense was that he was elsewhere and was not the assailant, identity was the primary issue. The other crimes were admissible for this purpose and were sufficiently similar to meet the second prong of the test." *Franklin*, supra.

Even if the uncharged incidents had not been similar, there was a logical connection between them in that Lord told R. D. that she was not as cooperative as the "two Lilburn girls." This was sufficient connection for admissibility. *Henderson v. State*, 182 Ga. App. 513, 516 (2) (356 SE2d 241) (1987), rev'd in part on other grounds, 257 Ga. 618.

(b) Before trial, Lord filed a motion in limine seeking to have the court, prior to trial, direct the prosecutors and their witnesses not to mention the uncharged incidents, because they were not similar or logically connected and unduly prejudiced Lord. Before voir dire, the motion was renewed and an objection was made to hearing the matter mid-trial. USCR 31.3 (B) provides that "[t]he judge shall hold a hearing at such time as may be appropriate, and may receive evidence on any issue of fact necessary to determine the request, out of the presence of the jury."

"By its language concerning the jury's presence, Rule 31.3 anticipates mid-trial as a possible appropriate hearing time. Thus, while it is preferrable that the hearing be held before trial, it is not reversible error to conduct the hearing in mid-trial where, as here, appellant can show no prejudice suffered from the failure to have the hearing before trial." *Thaxton v. State*, 260 Ga. 141, 144 (6) (390 SE2d 841) (1990).

2. Lord argues, with regard to voir dire, that he was improperly deprived of the right to individually question potential jurors regarding their exposure to media coverage of Lord and their individual experiences with robbery. During the general voir dire conducted by prosecution and defense, many jurors acknowledged having heard about Lord, apparently from the media, and several were excused by the court for cause because they indicated that they would not be able to be fair and impartial jurors as a result.

Defense counsel asked questions concerning media exposure and robbery to the panel as a whole, the only restriction was when he began to question each juror individually on the same topics. The court conducted the voir dire in compliance with USCR 10.1 and there was no improper restriction of it. *Walker v. State*, 258 Ga. 443, 444 (2) (370 SE2d 149) (1988).

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED MAY 29, 1991.

*D. Warren Auld*, for appellant.
*Thomas C. Lawler III, District Attorney, Debra K. Turner, Assistant District Attorney*, for appellee.