A89A0393. GROGAN v. THE STATE.
(384 SE2d 441)

BIRDSONG, Judge.

Michael Anthony Grogan was tried under an indictment charging him with felony theft by taking, in that between March 18, 1987 and June 8, 1987, "being in lawful possession of [$8,170] in money, of a value exceeding $500.00 and the property of Michael Boyle and G. Robert Wood, did unlawfully appropriate said property with intention of depriving said [owners] of said property." The jury convicted him of a misdemeanor.

The charge arose out of Grogan's management of a group of condominiums owned by Boyle and others, it being alleged that during the three months stated, he collected but failed to turn over to the

owners certain rent moneys. He defended by saying that he did several hundred dollars worth of maintenance and renovation of the condominium units, which were in disrepair; that he diligently attracted several new tenants for empty units; and that at least one rent check paid to him "bounced," while other tenants wrote themselves receipts and claimed to have paid Grogan in cash; and that some tenants made partial payments, declining to pay entirely because of flooding or disrepair.

Grogan had not previously been charged with any crime. Prior to trial, the State served notice upon appellant's counsel that it intended to use in evidence a "similar transaction," which the parties describe as follows: Appellant states in brief that "Laura and Charles Alphabet knew Grogan from Grogan's high school days. In 1984 Grogan proposed an investment plan that involved borrowing money on the Alphabets' home. Grogan was given $46,000 to invest. The money came from a mortgage obtained on the Alphabets' home. No money was ever repaid to the Alphabets. The Alphabets got an eviction notice from the loan company. The Alphabets' attorney later made arrangements for them to regain their home. No charges were even brought against Grogan." The State agreed with this summarization, but added: "When the Alphabets attempted to confront [a]ppellant about his 'investment' of their money, he was very difficult to find and would not return their calls. When they did contact [a]ppellant, he would assure them everything was all right. When the Alphabets were forced to move from their home, [a]ppellant allowed them to move into 'his' home on Cherry Lane. In fact, [a]ppellant had lost the Cherry Lane house two years before the Alphabets moved in. The Alphabets now are rebuying their home from the finance company."

Appellant urges error upon the admission of this evidence as a "similar transaction." Particularly, he complains of the manner in which it was done, in that the trial court declined to hear the State's motion to introduce a "similar transaction," until the end of the State's case-in-chief. *Held:*

The trial court erred in refusing to hear the motion to present evidence of a "similar transaction" until after the State had presented its case-in-chief on the indicted charges.

Rule 31.2 of the Uniform Rules of Superior Courts (see 253 Ga. 853-854) provides as to all motions and notices named in Rule 31.1 (which specifically includes motions or notices involving the introduction of evidence of a "similar transaction"), that *"[a]ll such motions . . . and notices shall be heard and considered at such time, date, and place as set by the judge. Generally, such will be heard at or after the time of arraignment and prior to the time at which such case is scheduled for trial."* (Emphasis supplied.) Superior Court Rule 31.3 (B) provides as to a Notice of Intent to Present Evidence of Similar

Transactions: ". . . The judge *shall hold a hearing at such time as may be appropriate,* and may receive evidence on any issue of fact necessary to determine the request. . . ." (Emphasis supplied.)

The Superior Court Rules on this subject are not crystal clear and require some interpretation. Although they give some latitude of discretion in the trial court's determination as to what time and date it may set a hearing on the prosecution's notice of intent to present evidence of a similar transaction, and the rules give no per se right to an *evidentiary* hearing, nevertheless, a hearing on the matter is mandated. *Hall v. State,* 181 Ga. App. 92 (351 SE2d 236). It is difficult to contemplate what would ordinarily be heard at such a hearing, if not the similarity of the other "transaction," which is by nature an evidentiary matter. In *Hall,* supra, this question was not reached because the molestation of the victim in that case was, as it turned out, the same type of act and done in the same manner as the similar transaction (molestation) which was introduced.

Rule 31.2 qualifies the discretion given to the trial court as to the time and date of the hearing, by providing: "Generally, such [motions and notices] will be heard at or after the time of arraignment and prior to . . . trial." If this direction were not intended to have some governing effect, it would not have been given. Obviously, therefore, what the State claims is the trial court's total and ungovernable discretion is neither total nor ungovernable. The rule just quoted also affects the application of Rule 31.3, which reiterates that the hearing *shall* be held "at such time as may be appropriate." Thus, the Rules construed in harmony contemplate that "generally" the mandated hearing will *appropriately* be held before trial, for obvious reasons of fairness and economy. We conclude any review of the trial court's exercise of discretion must be analyzed in that light and with that object in view, and we have done so in other cases.

We have found substantial compliance with the rules where *"[a] hearing was held just prior to trial* and the district attorney stated in his place what he expected the evidence to show happened in the instant case, and what he expected the evidence would show in the two prior incidents." (Emphasis supplied.) *Houston v. State,* 187 Ga. App. 335, 337 (2) (370 SE2d 178).

In another case we reiterated that " ' "the apparent purpose of the rule is to provide a criminal defendant with fair and adequate notice of the State's intention to utilize evidence of prior similar transactions *so that questions as to the admissibility of such evidence can be resolved before trial."* ' " (Emphasis supplied.) *Thompson v. State,* 186 Ga. App. 421, 422 (2) (367 SE2d 586).

In *Flournoy v. State,* 186 Ga. App. 774 (368 SE2d 538), where we held the evidence of similar transaction "certainly was admissible" based on its actual similarity (sales of cocaine to certain persons) to

the crime charged (sale of cocaine to the same persons in almost identical circumstances), the appellant complained that the trial court failed to determine its admissibility "before the evidence was presented to the jury," contrary to the requirements of Superior Court Rule 31.3. But the record showed that *"[b]efore any evidence was presented, however, the trial court did approve this evidence* of similar transactions 'contingent upon the proper foundation being laid. . . .'." Id., p. 775. We found this procedure "sufficiently complied" with the rule.

In *Nolan v. State*, 183 Ga. App. 52, 53 (2) (357 SE2d 873), the appellant contended the similar transaction hearing "was not in compliance with Rule 31.2 because it was not held prior to the time the case was scheduled for trial." After citing the rule we stated: "We find nothing in this Rule which *requires* the judge to hold a hearing prior to the date scheduled for trial, particularly in view of the provision that any hearing will be held at a time, date and place set by the judge. *The hearing here was held prior to any presentation of evidence,* and outside the presence of the jury. *Under such circumstances, we find no error in holding the hearing on the date of trial."* (Emphasis supplied.)

Thus, we have conceded that in view of the discretion given in the rule, substantial compliance does not necessitate that the hearing be held "prior to the time at which such case is scheduled for trial" merely because Rule 31.2 says this "generally . . . will" be the procedure (see *Houston,* supra), but we have also stated that the apparent purpose of the rule is directed to the end of " ' "[resolving] questions as to the admissibility of such evidence . . . before trial" ' " (*Thompson,* supra); and, we have consistently found sufficient compliance with the rule in circumstances where we could make the express distinguishing finding that the similar transaction hearing was held prior to any presentation of evidence. See *Flournoy,* supra, and *Nolan,* supra.

In this case we can find no persuasive reason why the trial court should not have held this hearing before trial; or why this appellant was required, as if it were a matter of inconsequence, to go through more than half the trial, and what he hoped was the entire presentation of the State's evidence, without knowing whether he must also defend a perhaps irrelevant matter of such prejudicial nature as this so-called "similar transaction." In effect, when the State "rested its case" in the trial of the indicted charges, its case was not "rested" at all, for the defendant then faced an entirely separate trial on another matter. Moreover, the mechanism of presenting the matter to the jury after the State's case-in-chief, and after a hearing outside their presence, accomplished nothing if not to unduly emphasize the evidence of the "similar transaction."

If the "similar transaction" here had indeed been so similar that the defendant must have reasonably anticipated its presentation (cf. *Hall*, supra, and *Flournoy*, supra), and because of a real similarity could not be overly prejudiced by it in the first place, there might be no reason to reverse this conviction, given the degree of modified discretion stated in Superior Court Rules 31.2 and 31.3. But we cannot find these two transactions to be so similar. The State concedes that one prong of the test of admissibility of such other evidence is based upon a sufficient similarity, correlation, or connection to the crime being tried *so that proof of the prior crime, incident or transaction tends to prove an element of the crime being tried. Brock v. State*, 254 Ga. 682 (2) (333 SE2d 593); *Saylors v. State*, 251 Ga. 735 (7) (309 SE2d 796); *Davis v. State*, 249 Ga. 309 (290 SE2d 273). However, we fail completely to see what "element" of the indicted crimes is proved by the rather loose allegations that defendant invested money for Mr. and Mrs. Alphabet, and that when the money was lost, he invited them to stay at his home, which home he no longer owned. If there is any similarity in this evidence, it does not outweigh its inherent prejudicial effect upon the proof of the crimes charged here.

The State suggests the Alphabets' difficulty of getting in touch with Grogan after the loss of their investment is a similar element, but this does not much prove guilt in that investment transaction, and certainly not so much as to justify using it to prove guilt of this crime. The fact that money was involved in both transactions is a thread too ordinary and thus too slender to hold them together, and certainly is not strong enough to justify the risk of certain prejudice; so too is an alleged "failure to account," which is in any event entirely a conclusory matter.

The State insists the transactions need not be "identical," but that rather "the question is one of relevance." Particularly, we fail to see any relevance in the circumstance that after he allegedly bilked the Alphabets out of their money so that they lost their home, he invited them to stay at his house. As to this singular circumstance, we fail to see any relevance to this case in the fact that he no longer owned his own house. The State's strained attempts to paint these circumstances as relevant proof of bad motive or scheme, prove the tenuousness of any relationship to this case. The burden placed upon the defendant to disprove any such relationship was enormous. In short, we fail to see enough relevance in that investment matter with Mr. and Mrs. Alphabet to justify forcing the appellant to endure most of this complex theft-by-taking trial before he could learn how much more complex it would get, or how many more alleged "improprieties" he would have to defend before his ability to raise a reasonable doubt as to this offense was fatally diminished.

There appearing to be no solid reason to refuse to hear this mat-

ter prior to trial, or at the very least give fair notice before trial to the defendant that the evidence would be admitted (as in *Flournoy*, supra), and because the other transaction was not so clearly similar (c.f. *Hall*, supra) as to justify keeping the defendant in suspense by holding off on the matter, we find the failure to hear it and decide its admissibility before trial to be an abuse of discretion *under the complex facts of this case*, and we reverse the conviction on that basis. We also find the admission of the evidence was unwarranted as it was not sufficiently similar to justify the prejudice it inevitably caused.

We can have no doubt these errors were harmful, for the jury did return a guilty verdict for the crime indicted, but only for a misdemeanor, or the theft of less than $500, which is a finding not consistent with the evidence showing guilt of theft of a much larger sum, if any. In a case of less complex proof, the result might be different, but in this case the trial court's failure to hold the hearing on the matter prior to trial not only placed the defendant at enormous disadvantage, but also resulted in the erroneous admission of evidence which was not so substantially similar as to prove elements of this crime. That is, it inherently prejudiced appellant's ability to defend against crimes charged while producing nothing of overwhelming relevance.

*Judgment reversed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 11, 1989.

*J. Robert Joiner*, for appellant.

*Lewis R. Slaton, District Attorney, Rebecca A. Keel, William C. Akins, Joseph J. Drolet, Assistant District Attorneys*, for appellee.