## S90A0255. THAXTON v. THE STATE.
(390 SE2d 841)

BENHAM, Justice.

Richard Lamar Thaxton appeals his convictions for the robbery and felony murder of Mary Frances White.[1] We affirm appellant's felony murder conviction.[2]

Appellant was positively identified by an eyewitness as the man who grabbed the 65-year-old victim's purse and dragged her with him when she refused to yield possession of her bag. After the victim was knocked to the ground and the purse strap broken, the assailant, with the purse, entered a waiting car bearing the tag number CTD-834. The victim suffered abrasions and bruises, and died the next morning after suffering a heart attack. The neuropathologist who served as assistant medical examiner testified that the victim suffered severe internal trauma in the abdomen, blunt force trauma on the head, and died from a heart attack caused by generalized blunt trauma.

1. The evidence was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979);

---

[1] The robbery occurred on June 30, 1988, and the death occurred on July 1, 1988. Appellant was indicted on September 8, 1988, and convicted by a Fulton County jury on February 7, 1989. His motion for new trial was denied on September 29, 1989, and the case was submitted on briefs to this court on January 5, 1990.

[2] Appellant's conviction for robbery, the underlying felony in the felony murder conviction, was vacated by the trial court on September 29, 1989. See *Atkins v. Hopper*, 234 Ga. 330 (3) (216 SE2d 89) (1975).

*Durden v. State*, 250 Ga. 325 (5) (297 SE2d 237) (1982).

2. Appellant contends that he asserted his constitutional right to represent himself during jury selection and again during the course of the trial, and that the trial court's denial of his request, without discussion or inquiry, was error.

Both the federal and state constitutions guarantee a criminal defendant the right to self-representation. See *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975); 1983 Ga. Const., Art. I, Sec. I, Par. XII. An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation. *Faretta*, 422 U. S. at 836; *Strozier v. Newsome*, 871 F2d 995 (11th Cir. 1989). See also *Potts v. State*, 259 Ga. 812 (388 SE2d 678) (1990); *Williams v. State*, 169 Ga. App. 812, 814 (315 SE2d 42) (1984).

In the case at bar, appellant did not make an unequivocal assertion of his right to represent himself prior to the commencement of his trial.[3] While his remarks may be construed as an expression of dissatisfaction with his attorney, they cannot be construed as an assertion, much less an unequivocal assertion, of his right to represent himself. Compare *Faretta,* supra; *Fitzpatrick v. Wainwright*, 800 F2d 1057 (11th Cir. 1986). Appellant did, however, unequivocally assert his right to represent himself in the midst of his trial, during a discussion between the court and counsel concerning appellant's behavior.[4] The denial of this request to represent himself, a request made after the testimony of the State's third witness, cannot serve as the basis for reversal since a defendant "cannot frivolously change his mind in midstream" by asserting his right to self-representation in the middle of his trial. *Preston v. State*, 257 Ga. 42 (3) (354 SE2d 135) (1987).

3. During voir dire, appellant destroyed the indictment and announced before the venire that he wished to make a confession. Contending that it would be impossible to select an impartial jury from the panel that had witnessed appellant's outburst, appellant's counsel moved for a new panel from which to select the jury.

The trial court's denial of that motion was not error. The only member of the venire who expressed reservations about his ability to be impartial due to appellant's behavior did not serve on the jury which convicted appellant. Since there was no showing that the out-

---

[3] When appellant's appointed counsel introduced herself to the venirepersons at voir dire as the attorney representing appellant, appellant stated: "Ain't no reason saying that. Don't represent me. Representing herself. I can't let nobody represent me, you know. Easier for me to represent—" At his attorney's request, appellant was then removed from the courtroom for the duration of the voir dire.

[4] Outside the presence of the jury, appellant stated: "I don't want her to represent me. I will represent myself."

burst influenced the minds of the jury prejudicially to appellant, the denial of appellant's motion was not error. *Roberts v. State,* 259 Ga. 441 (2) (383 SE2d 872) (1989). Compare *Lingerfelt v. State,* 147 Ga. App. 371 (1) (249 SE2d 100) (1978).

4. Appellant maintains that, having witnessed appellant's courtroom behavior, the trial court sua sponte should have conducted an inquiry into appellant's competence to stand trial. Pursuant to the pre-trial request of appellant's counsel, psychiatric personnel at the Georgia Regional Hospital had evaluated appellant approximately six weeks prior to trial and determined that appellant was competent to stand trial, and that his lack of cooperation should not be mistaken as an inability to communicate effectively with an attorney. "[C]onstitutional guarantees require the trial court to inquire into competency, even where state procedures for raising competency are not followed, if evidence of incompetence comes to the court's attention." *Baker v. State,* 250 Ga. 187, 190 (297 SE2d 9) (1982). Assuming arguendo that appellant's courtroom behavior constituted *evidence,* it was not evidence of incompetence but the very lack of cooperation that the psychiatric evaluators warned should not be mistaken for incompetence. There being no evidence of incompetence, the trial court did not err by failing to sua sponte order a competency hearing. See *Harris v. State,* 256 Ga. 350 (2) (349 SE2d 374) (1986).

5. Appellant contends he was denied a fair trial due to a purported violation of the holding in *Bruton v. United States,* 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). At trial, the investigating detective testified that, based on a meeting he had with one of appellant's co-defendants, he included a picture of appellant in a photo line-up he assembled for the eyewitness. The detective's testimony that he "had received information that [appellant] was the one — " was stricken in response to appellant's hearsay objection. After testimony in which the detective identified several photographic exhibits, explained how he had presented the photos to the eyewitness, and stated that the eyewitness had immediately identified appellant's photo as depicting the person she had seen take the victim's purse, appellant's counsel made a motion for mistrial, citing *Bruton.*

A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it. *Peoples v. State,* 184 Ga. App. 439 (361 SE2d 848) (1987).

6. Contending that he did not receive sufficient notice of the State's intent to introduce evidence of a similar transaction and that the court did not hold a timely hearing on the admissibility of the similar transaction evidence, appellant maintains the admission of the similar transaction evidence violated Uniform Superior Court Rule 31.1-3 and was reversible error.

Although Rule 31.1 requires the notice to be filed at least 10 days before the trial, it authorizes the exercise of a trial court's discretion by providing that the trial court may shorten or lengthen the time for compliance with the rule. *Robinson v. State*, 257 Ga. 194 (1) (357 SE2d 74) (1987). The trial court's decision that the 5-day notice given by the State was sufficient was not an abuse of discretion. See *Thompson v. State*, 186 Ga. App. 421 (2) (367 SE2d 586) (1988).

Appellant, citing *Grogan v. State*, 192 Ga. App. 234 (384 SE2d 441) (1989), contends that the hearing on the similar transaction evidence, held after the State had rested its case and the trial court had entertained motions for directed verdict, was untimely.[5] Under the "complex facts" of *Grogan*, the Court of Appeals reversed the defendant's conviction, concluding that the trial court abused its discretion in not holding the Rule 31.1 hearing prior to trial because there was "no solid reason to refuse to hear [the] matter prior to trial" and because the alleged similar transaction "was not so clearly similar. . . ." Id. at 239. The Court of Appeals did not hold that the Rule 31.3 hearing must be held prior to trial, and we now decline to so hold.

Rule 31.2 provides that the trial court shall set the time for a hearing on the notice of the State's intention to present evidence of similar transactions, and that "[g]enerally, such will be heard at or after the time of arraignment and prior to the time at which such case is scheduled for trial." Rule 31.3 permits the trial court to conduct the hearing "at such time as may be appropriate . . . out of the presence of the jury." By its language concerning the jury's presence, Rule 31.3 anticipates mid-trial as a possible appropriate hearing time. Thus, while it is preferable that the hearing be held before trial, it is not reversible error to conduct the hearing in mid-trial where, as here, appellant can show no prejudice suffered from the failure to have the hearing before trial.

7. Appellant cites as error the refusal of the trial court to permit a physician called by appellant's co-defendant to state his opinion as to the cause of the victim's heart attack. The witness was the victim's treating physician upon her emergency admittance into the hospital shortly before she died. When the witness was asked if he could state with absolute medical certainty that the victim's heart attack was caused by blunt trauma, the trial court sustained the State's objection that the question called for an opinion.

"The opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinion may be given on the facts as proved by other witnesses." OCGA § 24-9-67.

---

[5] After the hearing was held and the trial court determined the evidence put forth by the State was an admissible similar transaction, the trial court allowed the State to reopen its case to present the evidence to the jury.

Thus, the trial court erred when it sustained the objection to the expert's opinion testimony. However, in the absence of a proffer and in light of the physician's previous testimony that he did not know what had caused the victim's heart attack but that being robbed and dragged could have led to the heart attack, the trial court's error was harmless.

*Judgment affirmed. All the Justices concur, except Weltner and Hunt, JJ., who concur specially.*

HUNT, Justice, concurring specially.

I write separately because I cannot agree with the majority's interpretation of the hearing requirement under Superior Court Rule 31.3. Concerning the interplay between Rules 31.2 and 31.3, the Court of Appeals in *Grogan v. State*, 192 Ga. App. 234, 236 (384 SE2d 441) (1989) held:

> Thus, the Rules construed in harmony contemplate that "generally" the mandated hearing will *appropriately* be held before trial, for obvious reasons of fairness and economy. We conclude any review of the trial court's exercise of discretion must be analyzed in that light and with that object in view. . . .

This is consistent with the purpose of the rule which is:

> " ' "[T]o provide a criminal defendant with fair and adequate notice of the State's intention to utilize evidence of prior similar transactions *so that questions as to the admissibility of such evidence can be resolved before trial.*" ' " Id.

In so stating, the Court of Appeals recognized that in view of the trial court's discretion the hearing need not be held before the trial is scheduled but should be concluded before the presentation of evidence. This was not done in *Grogan* where, as here, the hearing was conducted after the state had rested its case.

The majority correctly notes the Court of Appeals' reversal of the conviction in *Grogan* was based not so much on its interpretation of the rule as on the lack of similarity between the previous event and the one for which Grogan was being tried. But of what value is the establishment of two rules of procedure, one requiring a pre-trial hearing when the "similar transaction" is of debatable relevance, as in *Grogan*, and another in the case before us, where the relevance is clear? How is that consistent with the stated purpose of the rule in the first place? What does it do but create another issue to be resolved on appeal: whether the defendant was harmed by the untimely inquiry?

I concur in the judgment because reversal is not required under these facts. I would hold, however, delaying the 31.3 hearing until the end of the state's evidence amounts to an abuse of discretion absent the consent of the defendant.[6]

I am authorized to state that Justice Weltner joins in this special concurrence.

DECIDED MAY 2, 1990.

*L. David Wolfe & Associates, Susan E. Teaster,* for appellant.
*Lewis R. Slaton, District Attorney, Richard E. Hicks, Assistant District Attorney, Michael J. Bowers, Attorney General, Andrew S. Ree,* for appellee.

---

[6] Such discretion would be exercised properly by any means which provided the defendant with adequate knowledge of the nature of the similar transactions before presentation of the state's case, although a trial court appropriately might reserve a final decision on admissibility of those similar transactions until the conclusion of the state's evidence, "contingent upon a proper foundation being laid," (see *Grogan* at 237, discussing *Flournoy v. State,* 186 Ga. App. 774 (368 SE2d 538) (1988)), or for other legitimate reasons.