## A99A1343. MARTIN v. THE STATE.
(523 SE2d 84)

JOHNSON, Chief Judge.

A jury found Daniel Martin guilty of child molestation. In his sole enumeration of error, Martin contends the trial court erred in forcing him to proceed to trial without an attorney. In order to decide this case, we must answer three questions: (1) Did Martin knowingly and voluntarily waive his right to counsel? (2) Did the trial court properly inquire into the question of Martin's indigent status to determine if he was eligible to have appointed counsel represent him? (3) Did the trial court properly determine on the record that Martin had or had not been diligent in his efforts to obtain private counsel after being informed he could not be appointed a public defender? We find the trial court erred in not appointing an attorney to represent Martin or, at the very least, in not allowing Martin additional time to retain his own attorney after he showed diligent efforts to do so. We reverse his conviction, as Martin is entitled to a new trial.

On August 13, 1998, Martin was arraigned and entered a plea of "not guilty." In response to questioning by the trial court, Martin

---

[7] See *Bedingfield v. State*, 219 Ga. App. 248, 249 (2) (464 SE2d 653) (1995); *Pittman v. State*, 189 Ga. App. 781, 782 (2) (377 SE2d 695) (1989).

indicated that he could and would hire his own attorney.

On September 14, 1998, Martin's case was called for trial. Martin stated: "I don't want an attorney. I'd like to represent myself." The trial court questioned him as to his understanding of the importance of having counsel and the possible sentences he could receive. However, Martin still insisted that he wanted to proceed without an attorney. Martin asked the trial court how to subpoena witnesses, and the trial court advised him how to have subpoenas issued. Martin then requested a two-week continuance to allow him to subpoena the witnesses he identified as important to his defense. The trial court granted his request. It also advised Martin to apply for a court-appointed attorney through the local public defender's office. Martin commented that he was not sure if he would qualify for an appointed attorney and expressed his understanding that the trial court would not continue his case a second time.

On September 28, 1998, Martin's case was again called for trial. Martin informed the trial court that he had applied for a public defender but did not qualify financially and that he had been unable to hire an attorney because he did not "qualify financially with any other attorney either." He attempted to explain why he could not hire an attorney and informed the trial court that he had searched for an attorney. The trial court, however, insisted that Martin merely respond "yes" or "no" to three questions: (1) whether he was given additional time to hire an attorney, (2) whether he had been able to hire an attorney, and (3) whether he was ready to proceed to trial. After responding "yes" or "no" to the first two questions, but having his attempts to explain his answers cut off, Martin said that he was ready to go to trial. At the conclusion of the trial, the jury found Martin guilty of child molestation.

1. Did Martin knowingly and voluntarily waive his right to counsel?

The Supreme Court of Georgia and this court have consistently observed the fundamental nature of the right to counsel and its importance in our judicial system. See *McAuliffe v. Rutledge*, 231 Ga. 1, 3 (200 SE2d 100) (1973); *Campbell v. State*, 128 Ga. App. 74, 75-78 (1) (195 SE2d 664) (1973). In the present case, Martin contends he was denied his constitutional right to counsel because he lacked the financial resources to hire an attorney for trial.

While the state suggests that Martin voluntarily chose to represent himself after being warned of the consequences of doing so, and therefore waived his right to counsel, the transcripts do not support this position. Clearly, the trial judge did not believe Martin had waived his right to counsel because he gave Martin more time to try to qualify for a public defender in August and additional time to hire a private attorney in September. Moreover, Martin's colloquy with

the trial court immediately prior to his trial shows that he preferred to have an attorney and only "chose" to represent himself because he believed he did not qualify for a court-appointed attorney and he could not afford to retain a private attorney. See *Flanagan v. State*, 218 Ga. App. 598, 600 (462 SE2d 469) (1995).

2. Did the trial court properly inquire into the question of Martin's indigent status to determine if he was eligible to have appointed counsel represent him?

Martin argues that the trial court erred in failing to determine whether he was, in fact, indigent and whether special circumstances existed which would have required the appointment of counsel. Although the trial court correctly advised Martin of his right to retain counsel and informed Martin that he would not be given an additional continuance, when Martin appeared in court without counsel and indicated that he searched but could not find an attorney he could afford, it was incumbent upon the trial court to determine three issues on the record: (1) whether Martin was eligible to have appointed counsel represent him, and, if not, (2) whether Martin exercised reasonable diligence in attempting to retain trial counsel and (3) whether the absence of trial counsel was attributable to reasons beyond Martin's control. *Flanagan*, supra; see also *Lang v. State*, 226 Ga. App. 729, 733 (7) (487 SE2d 485) (1997); compare *Eason v. State*, 234 Ga. App. 595, 597-598 (2) (507 SE2d 175) (1998) (trial court ascertained on the record that defendant failed to exercise due diligence to retain counsel and was not prevented from retaining counsel by reasons beyond defendant's control).

We certainly recognize a trial court's frustration over calendar disruptions when a defendant attempts to delay proceedings. A party is not permitted to use his failure to employ counsel as a dilatory tactic. *West v. State*, 136 Ga. App. 249 (1) (220 SE2d 767) (1975). However, this does not permit a trial court to proceed with a trial in a criminal case without first determining on the record whether the defendant is entitled to appointed counsel. Even if a defendant is determined to be nonindigent, a trial court has a duty to affirmatively exercise its discretion to appoint counsel for nonindigent defendants based on individual circumstances as authorized by Uniform Superior Court Rules 29.4 and 29.5. *McQueen v. State*, 228 Ga. App. 732, 734 (2) (492 SE2d 720) (1997).

This case presents two problems. First, the trial court basically delegated to the public defender a nondelegable duty to inquire about the facts of indigence. The record shows that it is not until Martin's motion for new trial hearing, when Martin had an attorney acting pro bono, that the trial court heard and considered evidence concerning Martin's indigence. Prior to this time, the trial court blindly relied on the public defender's finding that Martin was not indigent

under their standards. This brings us to the second problem: Clearly, the information on Martin's application for a public defender was not properly communicated either to the public defender himself by the office secretary or to the court by the public defender's office.

Martin's application for appointment of counsel is part of the record before us. It shows that he was self-employed for the prior three months. Under "net take home pay" Martin wrote "200-300-500 (weekly) 800-2000 (monthly) pay flux, according to Bids. *No income in 1 mo.*" (Emphasis supplied.) He further indicated that he was married and had an eight-month-old child, his wife did not work, and he did not have any other sources of income, assets or savings. His listed monthly debts included $500 for rent, $200 for his 1983 pickup truck, $60 for electricity, $100 for telephone, $100 for a loan for tools, $420 for the baby, and $300 for food, a total of $1,680. The application stated that this amount did not include gas. According to this application, even if Martin had previously and regularly earned his highest estimated income of $2,000 per month, he would have had only $320 per month to spend on an attorney after his expenses were paid. And he had *no* income during the previous month.

In addition, evidence at the motion for new trial hearing showed that when Martin appeared for trial in September he and his wife may have had $50, they had no water at their house, Martin was on his own because he and his business partner had just severed their relationship, he had found only one job since the partnership dissolved, and he had been required to pawn some of his tools to raise the money which would enable him to send subpoenas to witnesses in Florida. Martin had to pawn more of his tools to buy food in early September, and, because he had not been able to make his payments, his truck was repossessed.

Since the only evidence we have regarding Martin's indigence is testimony at the hearing on his motion for new trial, we must assume that had a hearing been properly held at the pretrial stage, the evidence would have been the same. Based on this evidence, we find that the trial court erred in failing to appoint Martin an attorney based on his individual circumstances or, alternatively, in failing to grant him more time to obtain a private attorney. Martin's motion for new trial should have been granted.

3. Did the trial court properly determine on the record that Martin had or had not been diligent in his efforts to obtain private counsel after being informed he could not be appointed a public defender?

Martin argues further that the trial court erred in not determining whether he acted with reasonable diligence in attempting to obtain an attorney and whether the absence of an attorney was attributable to reasons beyond his control. Even if the trial court determines that a defendant is not entitled to an appointed attorney,

it is incumbent upon the trial court to further determine on the record whether a defendant exercised due diligence in attempting to obtain an attorney and whether a defendant's lack of an attorney is due to reasons beyond his control. It is clear from the record that the trial court did not either inquire as to Martin's diligence or allow Martin to explain his efforts. Instead of a hearing into these matters, the following colloquy occurred immediately prior to Martin's trial:

> THE COURT: Okay. Well let me — let me take care of a preliminary matter. We've done this I know a number of times on the record. You understand you're entitled to an attorney?
> MARTIN: Right. Well I've asked for an attorney, and I was turned down.
> THE COURT: Right. You did not qualify financially. . . .
> MARTIN: Right.
> THE COURT: As I recall.
> MARTIN: And I don't qualify financially with any other attorney either because. . . .
> THE COURT: Okay.
> MARTIN: They don't. . . .
> THE COURT: But I — I gave you additional time to hire an attorney?
> MARTIN: I have searched. I have searched.
> THE COURT: But you've got to answer yes or no so we can put it on the record.
> MARTIN: Yes.
> THE COURT: I did give you. . . .
> MARTIN: Yes, you did.
> THE COURT: Additional — okay.
> MARTIN: Yes, you did.
> THE COURT: And you've been unable to hire an attorney at this. . . .
> MARTIN: Yes.
> THE COURT: Time? But you're ready to go to trial, is that right?
> MARTIN: I'm ready to go to trial.
> THE COURT: Very good.

Not only was a hearing never held on these issues, Martin was not even permitted to explain his inability to hire an attorney.

Because the only evidence we have as to Martin's diligence and his efforts to retain counsel is the evidence presented at the hearing on the motion for new trial, we must assume that had a hearing been properly held at the pretrial stage, the evidence would have been the

same. At the motion for new trial, an attorney Martin attempted to hire testified that even if Martin had the money to hire him, he could not have handled the case because he was already working 75 hours per week and was still way behind in his case load. This attorney strongly advised Martin to go to the public defender's office because it did not appear that Martin could afford an attorney.

In addition, Martin's wife testified that two other attorneys informed them that they did not have time to prepare the case even if the Martins had the money to hire them. According to Martin, he had believed he could hire his own attorney in August, but then he and his partner split and he had no work. One attorney told him he needed $3,000 to take the case; another told him he needed $20,000, but would be willing to take only ten percent up front; others were simply unavailable.

In an attempt to raise money for an attorney, Martin's wife called two car title loan businesses, but was informed her car was too old for any type of loan. The Martins also attempted to obtain a loan from a friend.

The transcript reveals that the trial court failed to exercise its affirmative duty of considering Martin's individual circumstances and determining on the record whether Martin exercised reasonable diligence in attempting to retain trial counsel. Based on this evidence, at the very least, the trial court erred in not allowing Martin additional time to retain his own attorney based on his exercise of diligence. Under these circumstances, Martin is entitled to a new trial. See generally *McQueen*, supra; *Flanagan*, supra. Therefore, we reverse the judgment of conviction.

*Judgment reversed. Pope, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 5, 1999.

*William B. Barker*, for appellant.
*Michael H. Crawford, District Attorney*, for appellee.