## A11A1272. ZACHERY v. THE STATE.

(718 SE2d 332)

PHIPPS, Presiding Judge.

Quinton Zachery and Leroy McMath were jointly indicted for financial identity fraud. Prior to trial, McMath pled guilty. At trial, McMath testified and implicated Zachery in the commission of the crime. A jury found Zachery guilty. On appeal, Zachery argues that the evidence was insufficient to support his conviction. We disagree, and affirm.

1. Zachery contends the evidence was insufficient to support his conviction because the state failed to prove that he was the person who applied for a credit card in the victims' names; therefore, he argues, the state failed to prove that he used the victims' identifying information to access their resources.

"When reviewing a challenge to the sufficiency of the evidence used to support a conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence."[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2] "Circumstantial evidence need not exclude every other hypothesis save that of the accused's guilt but only reasonable inferences and hypotheses, and it was for the jury to determine whether all reasonable hypotheses had been excluded."[3]

OCGA § 16-9-121 (a) (1) provides: "A person commits the offense of identity fraud when he or she willfully and fraudulently [w]ithout authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person[.]" As used in the financial identity fraud statutes, the term "identifying information" includes tax identification numbers.[4] The term "resources" includes a person's or entity's credit, as well as "[c]redit, charge, and debit accounts."[5]

Viewed in the proper light, the evidence shows that Mickey Layman was co-owner of a swimming pool company named Atlanta Pools, Inc. On January 29, 2007, Layman found in Atlanta Pools's mailbox six Home Depot commercial credit cards bearing Atlanta Pools's name. One of the cards was issued to Layman and another was issued to his brother (Kenneth Layman) who was co-owner of

---

[1] *Arroyo v. State*, 309 Ga. App. 494 (711 SE2d 60) (2011) (citation omitted).

[2] Id., citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Hewitt v. State*, 277 Ga. 327, 330 (1) (b) (588 SE2d 722) (2003) (citation omitted).

[4] OCGA § 16-9-120 (4) (O), (Q).

[5] OCGA § 16-9-120 (5) (A), (C).

Atlanta Pools; the remaining four were issued to individuals, including Zachery, whom Layman did not know. Layman did not know Zachery or McMath, and he did not give them authority to conduct his business or to access his credit. Layman's brother testified that he did not open a commercial account at Home Depot, nor did he authorize anybody to open a commercial account in the name of Atlanta Pools or in his name. Layman's brother also did not know Zachery or McMath.

From January 21, 2007 to January 28, 2007, Zachary charged items to the Home Depot credit card account issued in Atlanta Pools's name. Zachery's purchases totaled $11,773.26, and consisted primarily of household items, building materials, and gift cards. The purchases were made with a temporary charge pass, which is what a customer uses until receipt of an actual credit card. There was no evidence that purchases were made on the account after January 28, 2007.

Before a creditor issues a temporary charge pass, either an electronic or a paper credit card application must be submitted; the application requires a federal tax identification number. An operations manager for Home Depot testified that in order to open a commercial credit card account, a person must complete a commercial credit application that requires, among other things, a taxpayer identification number. Atlanta Pools and Layman had been issued federal tax identification numbers.

McMath testified that Zachery told him McMath could purchase merchandise from Home Depot at a discount by buying Home Depot gift cards from Zachery and by using a Home Depot credit card account to which Zachery had added McMath's name. At Zachery's direction and using account and other information about Atlanta Pools provided to McMath by Zachery, McMath used the temporary pass to make purchases on accounts bearing Atlanta Pools's name. McMath made purchases on the account between January 24, 2007 and January 27, 2007. McMath testified that Zachery told him that he had to use the account within seven days.

Zachery, on the other hand, testified that he thought he was working for Atlanta Pools, which he thought was affiliated with McMath, and that he was merely following McMath's orders to pick up supplies that were already selected and to deliver them to various locations.

The evidence shows that the only persons who made purchases on the credit card account issued in Atlanta Pools's name were Zachery and McMath. Layman and his brother testified that they did not know Zachery or McMath and did not authorize Zachery or McMath to open a credit card account in the Laymans' names or Atlanta Pools's name. Zachery and McMath admittedly made pur-

chases on the account. Even most of the gift cards purchased by Zachery and McMath were redeemed within the same week they were purchased.

Although Zachery testified that he believed he was working for Atlanta Pools (which he thought was affiliated with McMath) and that he was merely following McMath's orders to pick up supplies that were already selected, the jury could have reasonably found that the evidence belied Zachery's claim; for instance, there was evidence that Zachery never scanned an order form at the check out counter; rather, all of the merchandise was individually scanned, an indication that he selected the merchandise for purchase. And one credit card was issued in Zachery's name, whereas McMath's name was added to the account only later.

Because the federal tax identification number of either Atlanta Pools or Layman was required as part of the credit card application to obtain temporary charge pass(es) which, according to the evidence, Zachery and McMath used to purchase thousands of dollars worth of merchandise in a short period of time, the circumstantial evidence was sufficient to authorize a jury to find that Zachery either directly or as a party to a crime[6] committed financial identity fraud by accessing the resources of Atlanta Pools and Layman through the use of identifying information without the authorization or permission of Atlanta Pools or Layman, with the intent to unlawfully appropriate the resources of Atlanta Pools and Layman to his own use.[7] Accordingly, Zachery's challenge to the sufficiency of the evidence on the basis that the state failed to prove that he applied for credit using Atlanta Pools's or Layman's identifying information is without merit.[8]

2. Zachery argues that his conviction should be reversed because the state did not establish venue.

In considering whether venue was properly proved, "[t]he standard of review is whether, considered in the light most favorable

---

[6] *Johnson v. State*, 299 Ga. App. 706, 708 (1) (a) (683 SE2d 659) (2009); see OCGA § 16-2-20 (b) (3), (4) (A defendant is a party to a crime if he "[i]ntentionally aids or abets the commission of the crime[,] or [i]ntentionally advises, encourages, hires, counsels, or procures another to commit [it].").

[7] See *Powell v. State*, 293 Ga. App. 442, 444 (667 SE2d 213) (2008); see OCGA §§ 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."); 16-9-121 (a) (1); *Reese v. State*, 308 Ga. App. 125, 126 (706 SE2d 623) (2011) (in affirming burglary and theft convictions, court held although there was no direct evidence that the defendant entered the storage garage or acted with intent to commit a theft, "combined circumstantial evidence was sufficient to entitle a jury to infer that [defendant] either directly committed burglary by entering the storage garage without authority and with the intent to commit a theft, or was a party to that crime.").

[8] *Powell*, supra, 293 Ga. App. at 444.

to the prosecution, the State proved the essential element of venue beyond a reasonable doubt."[9]

Generally, venue in a criminal case is in the county where the crime was committed.[10] Under the financial identity fraud statutes, however, a crime will be considered to have been committed in any county where the consumer or business victim, i.e., the entity whose means of identification or financial information was appropriated, resides or is found, or in any county in which any other part of the offense took place, regardless of whether the defendant was ever actually in such county.[11] Venue is a jurisdictional fact and must be proved beyond a reasonable doubt.[12]

The indictment named the victims as Atlanta Pools and Layman and alleged that the crimes occurred in Forsyth County. Layman testified that he partly owned Atlanta Pools. Layman further testified that he had been a resident of Forsyth County for 12 years and that Atlanta Pools had been located in Forsyth County for 17 years. A rational trier of fact was authorized to find beyond a reasonable doubt that the victims resided or were found in Forsyth County at the time the offense was committed, as alleged in the indictment.[13] Zachery's argument that the state failed to prove venue is without merit.[14]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED NOVEMBER 7, 2011.

*Mary Erickson*, for appellant.
*Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.

---

[9] *Brewster v. State*, 300 Ga. App. 143, 144 (684 SE2d 309) (2009) (citation omitted).
[10] *Green v. State*, 259 Ga. App. 195 (1) (576 SE2d 554) (2002); Ga. Const. 1983, Art. VI, Sec. II, Par. VI; OCGA § 17-2-2 (a).
[11] OCGA § 16-9-125.
[12] *Green*, supra.
[13] See id.; see generally *Arroyo*, supra.
[14] See *Green*, supra.