**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**February 19, 2021**

# In the Court of Appeals of Georgia

A20A1889. PORTER v. THE STATE.                                    HO-066C

HODGES, Judge.

Following a bench trial at which Jermaine Porter appeared pro se, the Superior Court of Bartow County entered a judgment of conviction against Porter for two counts of identity fraud (OCGA § 16-9-121). Now represented by appointed counsel, Porter appeals from the trial court's denial of his motion for new trial as amended, arguing that: (1) the trial court violated his constitutional rights by requiring him to represent himself at trial without an unequivocal waiver of his right to counsel and by failing to conduct a *Faretta*[1] hearing on the record; and (2) the evidence was insufficient to support the guilty verdicts. Although we conclude that the evidence was sufficient to support Porter's convictions, we further conclude that the record

---

[1] *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975).

fails to demonstrate that the trial court properly advised Porter of the dangers of proceeding pro se. Moreover, we conclude that, even if there was no unequivocal request to proceed pro se, the trial court failed to properly evaluate whether Porter acted with reasonable diligence in obtaining counsel and whether the absence of counsel was attributable to reasons beyond Porter's control. Therefore, we reverse.

1. Considering Porter's second enumeration first,[2] he contends that the evidence was insufficient to support his convictions. The gravamen of Porter's argument is that the State failed to present any direct evidence of Porter's involvement in the crimes and that the circumstantial evidence did not support the conclusion that Porter knew the items he retrieved from Walmart were purchased by "'accessing the resources of an individual,' that his co-defendant 'used the identifying information' to obtain the item, or that [he] actually did 'use such identifying information.'" We do not agree.

> When reviewing a defendant's conviction after a bench trial,
>
> the issue before [this Court] is whether the evidence was sufficient to
> support a conviction under the standards of *Jackson v. Virginia*, 443 U.

---

[2] See *Allison v. State*, 356 Ga. App. 256, 258 (1), n. 2 (846 SE2d 222) (2020) ("For convenience of discussion, we have taken the enumerated errors out of the order in which [Porter] has listed them.") (citation and punctuation omitted).

S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Therefore, we view the evidence in the light most favorable to the trial court's judgment, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence, nor do we determine the witnesses' credibility. Instead, we determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation and punctuation omitted.) *Hill v. State*, 341 Ga. App. 409 (801 SE2d 87) (2017). "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

Where the defendant offers an explanation of circumstantial facts or an alternative hypothesis of events, the reasonableness of that explanation is for the factfinder. Because the factfinder has heard the witnesses and observed them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court.

(Citation and punctuation omitted.) *Bradley v. State*, 317 Ga. App. 477, 479 (731 SE2d 371) (2012). In a bench trial, "if the judge is authorized to find that the evidence, though circumstantial, is sufficient to exclude every reasonable hypothesis save that of guilt, the verdict will not be disturbed by the appellate court unless the

verdict is unsupportable as a matter of law." *Youngblood v. State*, 179 Ga. App. 163, 164 (345 SE2d 634) (1986).

Here, the evidence revealed that at least two elderly victims (V. W. and L. R.), after visits to either Cartersville Medical Center or Redmond Regional Medical Center in October or November of 2015, learned that their mail had been diverted to 112 Jones Street in Cartersville without their consent or knowledge. Moreover, the victims discovered that someone had applied for credit cards using their identities. In particular, a credit card issued by Walmart in the name of one of the victims' names, V. W., had been used to purchase a Ninja blender and an iPad on Walmart.com and scheduled for pickup from the Cartersville Walmart. Two additional victims learned that their personal information had been compromised following similar visits.

Based upon the victims' reports, a Cartersville Police Department investigator obtained a search warrant for 112 Jones Street in Cartersville on November 13, 2015. Living at the residence were Rebecca Linley and her fiancé, Porter; none of the victims knew either Linley or Porter or had authorized either one of them to use their personal information. The investigator found "an enormous amount of items" inside the residence that were still in boxes or had tags attached, suggesting that the items had only recently been purchased. The investigator also found documents that

included the victims' names. Furthermore, the investigator found employee identification cards for Linley from Cartersville Medical Center and Redmond Regional Medical Center at the residence. In addition, the investigator located a notebook with handwritten entries including the victims' names, addresses, phone numbers, and the like.

The investigator also seized two laptop computers from the residence which he forwarded to the GBI for analysis. A GBI digital forensic investigator performed an analysis of both computers. In the first computer, the analyst discovered V. W.'s contact information as well as multiple internet searches, including "sale of gift cards instantly," "buy gift cards instantly," and "easy credit cards to get approved for." In the second computer, the analyst found contact information for L. R. and additional internet searches for a variety of terms, including "[i]f I keep applying for a Target card will I get approved," "[a]ll credit cards that are easy to get," and "how to find someone's driver's license number." Both computers contained registration information for "rell.porter@yahoo.com."[3] Finally, the analyst found an order from Walmart.com, placed using an email address in V. W.'s name, and an email indicating that the items ordered were ready to be picked up from the Cartersville Walmart. In

[3] Porter's full name is "Jermaine Terrell Porter."

an interview, Porter admitted picking up the Ninja blender and the iPad[4] from the Cartersville Walmart.[5]

Relevant to this case, a person commits the offense of identity fraud when he "willfully and fraudulently . . . [w]ithout authorization or consent, uses or possesses with intent to fraudulently use identifying information concerning a person[.]" OCGA § 16-9-121 (a) (1). Based upon our review of the evidence outlined above, we conclude that the evidence was sufficient to find Porter guilty beyond a reasonable doubt of, or as a party to, the crimes with which he was charged. See *Gaskins v. State*, 318 Ga. App. 8, 9-10 (1) (a) (733 SE2d 338) (2012); *Zachery v. State*, 312 Ga. App. 418, 418-420 (1) (718 SE2d 332) (2011).

2. Next, Porter asserts that the trial court violated his constitutional rights by requiring him to represent himself at trial without an unequivocal waiver of his right to counsel and by failing to conduct a *Faretta* hearing on the record. The record is in

---

[4] When the investigator found the empty containers for these items in Porter's residence, Porter stated that Linley returned the items to Walmart.

[5] A Bartow County grand jury indicted Porter for two counts of identity fraud. Porter waived his right to a jury trial and proceeded to a bench trial pro se, and the trial court returned a verdict of guilty against Porter on both counts of the indictment. The trial court denied Porter's motion for new trial as amended, and this appeal followed.

6

some conflict on this point. Based upon the trial court's statements, both at the conclusion of Porter's trial and during the hearing on his motion for new trial, the trial court believed that Porter made an unequivocal request to proceed pro se. However, the record does not demonstrate that the trial court advised Porter of the dangers of proceeding pro se. Furthermore, even in the absence of an express waiver of the right to counsel, the trial court failed to properly evaluate whether Porter acted with reasonable diligence in obtaining counsel and whether the absence of counsel was attributable to reasons beyond Porter's control.

(a) *Absence of Faretta Hearing*. It is axiomatic that the Georgia constitution provides that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel. . . ." Ga. Const. of 1983, Art. I, Sec. I, Par. XIV. Generally, a defendant's right to counsel "may be waived only by voluntary and knowing action." *Ford v. State*, 254 Ga. App. 413, 415 (563 SE2d 170) (2002); see also *Saunders v. State*, 347 Ga. App. 84, 86 (2) (815 SE2d 622) (2018). However, once a defendant makes a pre-trial, unequivocal assertion of the right to represent himself, the trial court should conduct "a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation." *Thaxton v. State*, 260 Ga. 141, 142 (2) (390

7

SE2d 841) (1990). "Under *Faretta* the trial court must apprise the defendant of the *dangers and disadvantages inherent in representing himself* so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Citation and punctuation omitted; emphasis supplied.) *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009). Rather than checking off a formulaic listing of factors, "the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Citation and punctuation omitted.) Id. Importantly, "[w]aiver will not be lightly presumed, and a trial judge must indulge every reasonable presumption against waiver." (Citation and punctuation omitted.) *Callaway v. State*, 197 Ga. App. 606, 607 (398 SE2d 856) (1990).

In this case, no transcripts of any pre-trial proceedings are included in the record or, apparently, even exist.[6] During the hearing on Porter's motion for new trial, in an attempt to fill this evidentiary gap, the trial court observed that "Porter was on the trial calendar, which the Court went over with him his right to hire an attorney when he was arraigned or to seek the public defender's office" and that Porter "made

---

[6] Importantly, the trial court suggested that none of the pre-trial court appearances, including Porter's arraignment and calendar calls, were recorded. To the extent such transcripts existed, Porter did not request them in his notice of appeal.

an application with the public defender's office."[7] At a subsequent court appearance, the trial court "touched on generally, with several defendants that day, their right to have an attorney." The trial court further noted Porter's trial was continued "several times because there was an ongoing issue of whether Mr. Porter was going to get a lawyer or whether he was going to represent himself[,]" but, "[d]uring the course of this time, Mr. Porter became embolden[ed] in the fact that he wanted to represent himself." Moreover, when the trial court again discussed Porter's right to counsel with him, Porter "was *adamant during all of those conversations that he wanted to represent himself in this case*, since he did not qualify for a public defender." (Emphasis supplied.) The trial court concluded that Porter "did not want to hire an attorney. *He wanted to represent himself.*" (Emphasis supplied.) At no time did the trial court indicate it had discussed the dangers of proceeding pro se with Porter, and Porter did not testify during the hearing on his motion for new trial.

---

[7] Although he applied for counsel, Porter did not qualify. Moreover, the trial court did not appoint stand-by counsel to assist Porter. Compare *Ford*, 254 Ga. App. at 416.

Taken as true, the trial court's statements are consistent with a defendant's unequivocal waiver of his right to counsel and his request to represent himself.[8] As a result, the trial court should have conducted a hearing on the record to further advise Porter on his right to counsel and on the dangers of proceeding pro se. See *Evans*, 285 Ga. at 68, 69 (recognizing need for *Faretta* hearing on the record); *Thaxton*, 260 Ga. at 142 (2). However, not only is there no evidence of a *Faretta* hearing, and even though we accept the trial court's statements about the substance of his discussions concerning self-representation as true, there is no indication from the trial court's post-trial statements that it ever advised Porter, in any form, of the dangers of self-representation.[9] In view of the presumption against a waiver of the right to counsel, see *Saunders*, 347 Ga. App. at 85 (2), *Callaway*, 197 Ga. App. at

---

[8] As a result, cases like *Hatcher v. State* are inapposite. 320 Ga. App. 366, 372-373 (1) (739 SE2d 805) (2013).

[9] Our holding here does not violate the presumption of regularity inasmuch as the trial court's statements, which we have accepted as true, are inadequate to constitute a *Faretta* hearing. See generally *Nix v. State*, 354 Ga. App. 47, 58 (8) (839 SE2d 687) (2020) (recognizing that there is a "presumption in favor of the regularity and legality of all proceedings in the trial court" and that appellate courts "will not presume error from a silent record"). Moreover, application of the presumption of regularity would be inappropriate in view of the admonition that a waiver of counsel "will not be lightly presumed" and that courts "must indulge every reasonable presumption *against* waiver." (Citation and punctuation omitted; emphasis supplied.) *Callaway*, 197 Ga. App. at 607.

10

607, it follows that Porter's convictions must be reversed. See, e.g., *Wiggins v. State*, 298 Ga. 366, 369-370 (782 SE2d 31) (2016); *Lamar v. State*, 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004).

(b) *Trial Court's Evaluation of Porter's Diligence to Secure Counsel*. Even if we were to construe the trial court's statements as indicating something other than an unequivocal waiver of the right to counsel, such that Porter's diligence in attempting to retain counsel would be the deciding factor, we conclude that the trial court failed to make necessary determinations on the record. Again, therefore, reversal is required.

> [W]here a non-indigent defendant has not invoked his right to represent himself at trial, but has also failed to hire an attorney to represent him, . . . the determination of whether he validly waived his right to counsel does not turn upon whether he knowingly and intelligently chose to proceed pro se. Instead, a finding of waiver depends on whether the non-indigent defendant exercised reasonable diligence in securing representation.

(Citations and emphasis omitted.) *Longo v. City of Dunwoody*, 351 Ga. App. 735, 742 (2) (832 SE2d 884) (2019). Therefore,

> [s]ince a non-indigent defendant's right to counsel is predicated upon his own diligence, a failure on his part to retain counsel may constitute a waiver of the right to counsel. *Thus, when presented with a non-indigent defendant who has appeared for trial without retained*

11

*counsel, the trial judge has a duty to delay the proceedings long enough to ascertain whether the defendant has acted with reasonable diligence in obtaining an attorney's services and whether the absence of an attorney is attributable to reasons beyond the defendant's control.*

(Citations and punctuation omitted; emphasis supplied.) *Eason v. State*, 234 Ga. App. 595, 597-598 (2) (507 SE2d 175) (1998); see also *Longo*, 351 Ga. App. at 741-742 (2); *Ford*, 254 Ga. App. at 415; *Houston v. State*, 205 Ga. App. 703, 704 (423 SE2d 431) (1992). Stated succinctly,

while a non-indigent defendant may forfeit [the right to counsel] by failing to act with reasonable diligence in obtaining an attorney's services, the trial court must exercise discretion in resolving the "reasonable diligence" issue by considering all factors which militate for or against the appointment of counsel. . . .

(Citation and punctuation omitted.) *McQueen v. State*, 240 Ga. App. 15, 16-17 (522 SE2d 512) (1999); see also *Young v. State*, 245 Ga. App. 799, 800 (1) (538 SE2d 487) (2000) ("an accused may be required to represent himself if his failure to obtain counsel is attributable to his own lack of diligence which amounts to a waiver of counsel"). To that end, a trial court must

determine three issues on the record: (1) whether [a defendant is] eligible to have appointed counsel represent him, and, if not, (2) whether

12

[the defendant] exercised reasonable diligence in attempting to retain trial counsel and (3) whether the absence of trial counsel was attributable to reasons beyond [the defendant's] control.

*Martin v. State*, 240 Ga. App. 246, 248 (2) (523 SE2d 84) (1999). "A trial court's decision on this issue is subject to reversal only for manifest abuse of discretion." *Young*, 245 Ga. App. at 800 (1); see also *McQueen*, 240 Ga. App. at 17.

At the beginning of trial, the trial court stated that Porter's case had been indicted approximately 10 months prior to trial and that Porter "had ample time to secure counsel, but he has elected to represent himself in this matter." At the conclusion of Porter's trial, the prosecuting attorney noted that Porter completed an application for appointed counsel approximately four months prior to trial, but did not qualify, and that "from the time of finding out that he did not qualify until [trial], there has been no attorney retained." The trial court also expounded on its previous statement, noting that Porter

has chosen to represent himself in this matter as a pro se defendant. It is not the Court's duty nor obligation to wait forever for a defendant to hire an attorney, but Mr. Porter has had plenty of time to exercise due diligence to obtain an attorney. . . . Mr. Porter has had the opportunity to hire an attorney if he chose to do so or if he was able to do so, but has

13

been unable to do so and, therefore, the Court finds that in the lack of exercise of diligence, he proceeded to trial as his own counsel today.

During the hearing on Porter's motion for new trial, the State again averred that Porter applied for appointed counsel through the public defender's office, but did not qualify for representation, and that Porter did not "make any effort to actually obtain his own private counsel." Thereafter, the State observed that Porter had researched Georgia law, cross-examined certain witnesses, and reviewed exhibits tendered by the State during trial. Furthermore, in a lengthy statement by the trial court during the hearing, it recounted multiple discussions with Porter concerning self-representation prior to trial. In its remarks, the trial court noted that it "went over with [Porter] his right to hire an attorney when he was arraigned or to seek the public defender's office[;]" that Porter completed an application for counsel with the public defender's office; that it again "touched on generally, with several defendants . . . , their right to have an attorney[;]" and that Porter's trial was originally scheduled for December 11, 2018, but that it was "continued several times because there was an ongoing issue of whether . . . Porter was going to get a lawyer or whether he was going to represent himself[;]"

The trial court further commented that it had "numerous conversations with . . . Porter about this case, and whether or not he wanted to represent himself. And he was adamant during all of those conversations that he wanted to represent himself in this case, since he did not qualify for a public defender." Similarly, the trial court stated that it "recall[ed] clearly having numerous discussions with Mr. Porter over the time of this case, indicating his right to have counsel. Mr. Porter declined to do so and determined to seek or be his own counsel in this matter." In addition, the trial court observed that it was

> not under an obligation to wait forever for a person to decide if they're going to hire a lawyer. . . . If a person is going to hire a lawyer, they must practice due diligence in doing so. Mr. Porter had . . . time from November of 2018 until May of 2019 to hire an attorney if he wished to do so. And I had advised him previously to that right.

At the conclusion of its remarks, the trial court stated that it

> had several conversations about his right to counsel, and whether or not he wished to hire a lawyer. *At the early point in time, he expressed some interest in doing that. So we tried to work around his schedule, and continued to do so*. But at some point in time, he . . . had made his mind up that, that was not going to happen. And that he was going to represent himself.

Accordingly, the trial court found that Porter

> had not practiced due diligence in regards to seeking an attorney, if
> that's what he wished to do. He waited some seven to eight months to
> do so. This Court is not required to keep continuing his case so that he
> can decide whether or not he wants to hire a lawyer. He must make that
> decision on his own and in a timely manner, and he must take it upon
> himself to practice due diligence in that regard.

Relative to Porter's self-representation, the trial court stated that Porter came to court "prepared to make legal arguments on his own behalf[.]"

In short, the record indicates that the trial court simply advised Porter of his right to counsel, accommodated Porter by continuing his case, and, when Porter appeared for trial without an attorney, found that Porter failed to exercise diligence without any further inquiry. Although the trial court described the procedural history of Porter's case, our law makes clear that more was required. As we have noted, it is incumbent upon the trial court in such circumstances

> to determine three issues on the record: (1) whether [a defendant is]
> eligible to have appointed counsel represent him, and, if not, (2) whether
> [the defendant] exercised reasonable diligence in attempting to retain
> trial counsel and (3) whether the absence of trial counsel was
> attributable to reasons beyond [the defendant's] control.

16

*Martin*, 240 Ga. App. at 248 (2); see also *Raines v. State*, 242 Ga. App. 727, 730 (3) (531 SE2d 158) (2000) (finding that even if a defendant is not indigent, "it is incumbent upon the trial court to further determine on the record whether [the defendant] acted diligently in attempting to obtain an attorney and whether the absence of an attorney was attributable to reasons beyond his control") (citation and punctuation omitted). Here, the record indicates that the trial court did not make a proper determination of two of the three factors it was required to consider.

(i) *Exercise of Reasonable Diligence*. After the trial court reviewed the procedural history of Porter's case, the trial court made an express finding that Porter failed to exercise due diligence in retaining counsel for trial. However, it also appears that the trial court's conclusion was based largely upon a singular fact — Porter's appearance for trial without counsel — which it automatically equated to a lack of reasonable diligence. But "[t]he fact that [Porter] did not retain counsel as instructed by the trial court, standing alone, is not sufficient to establish a waiver of right to counsel by the defendant." *Ford*, 254 Ga. App. at 416. And while it is true that "[a] party is not permitted to use his failure to employ counsel as a dilatory tactic[,]" such a failure "does not permit a trial court to proceed with a trial in a criminal case without first determining on the record whether the defendant is entitled to appointed

counsel." *Martin*, 240 Ga. App. at 248 (2). Indeed, "[e]ven if a defendant is determined to be nonindigent, a trial court has a duty to affirmatively exercise its discretion to appoint counsel for nonindigent defendants based on individual circumstances" if authorized by Uniform Superior Court Rules 29.4 and 29.5. Id. The record is devoid of any such inquiry by the trial court.[10]

(ii) *Absence of Counsel Attributable to Reasons Beyond Porter's Control.* Similarly, the record does not demonstrate that the trial court inquired of Porter whether the reason he appeared without counsel was based upon reasons beyond his control. See *Martin*, 240 Ga. App. at 250-251 (3).

In conclusion, we are mindful of the trial court's statements, offered at the conclusion of Porter's trial and during the hearing on Porter's motion for new trial, that Porter indicated during various pretrial hearings that he wished to proceed pro se. Likewise, we recognize that Porter did not ask for a continuance on the date of trial or otherwise refute the trial court's statements concerning the history of the case. The result is that, on the one hand, the trial court stated that Porter expressed his intention to proceed to pro se, but it failed to properly advise Porter of the dangers of

---

[10] We do note, however, that Porter was represented by counsel in this appeal pursuant to a contractual appointment by the Appellate Division of the Georgia Public Defender Council.

18

proceeding pro se. On the other hand is the trial court's finding that Porter failed to exercise reasonable diligence to secure counsel coupled with its failure to conduct two of its three required inquiries. Under either rubric, then, the trial court failed to properly advise Porter of his right to counsel and evaluate whether he waived that right, or whether he forfeited that right through his actions.

In sum, we conclude that the evidence was sufficient to find Porter guilty beyond a reasonable doubt of the crimes with which he was charged. However, we further conclude that the record fails to demonstrate that the trial court properly advised Porter of the dangers of proceeding pro se. Moreover, we conclude that, even in the absence of an unequivocal request to proceed pro se, the trial court failed to properly evaluate whether Porter acted with reasonable diligence in obtaining counsel and whether the absence of counsel was attributable to reasons beyond Porter's control. Accordingly, we reverse the trial court's order denying Porter's motion for new trial. Given our conclusion that the evidence was sufficient to support Porter's convictions, the State may retry Porter. See generally *Lamar*, 278 Ga. at 153 (2); *Melton v. State*, 282 Ga. App. 685, 694 (2) (d) (639 SE2d 411) (2006) (holding that State may retry defendant on a specific charge "without violating the Double

Jeopardy Clause, because there was sufficient evidence at trial to support that conviction").

*Judgment reversed. McFadden, C. J., and Doyle, P. J., concur.*